### CYNTHIA A. GREENE *vs.* ANDREW B. GREENE.

A decree of divorce from the bond of matrimony, although obtained by fraud and false testimony, cannot be set aside on an original libel, filed at a subsequent term.

LIBEL for a divorce from the bond of matrimony, for fiv years' desertion of the libellant by the respondent. The libel also set forth that the respondent, at the last November term of this court, by false testimony, fraudulently procured a divorce from the libellant for the alleged cause of adultery. " Wherefore, in addition to the prayer, which she now submits to this honorable court, to be divorced from said Andrew as the law provides, she prays that this honorable court will hear evidence of the fraud and collusion, by means of which said libel of divorce of said Andrew was by him prosecuted, and the decree of divorce by him obtained against her, and that the same may be reversed, annulled and set aside, and all such further proceedings may be had and ordered by this honorable court as to justice and truth shall appertain."

*E. L. Barney*, for the libellant.

*T. D. Robinson*, for the respondent.

SHAW, C. J. It will be perceived that this is an original libel, by wife against husband, alleging five years' desertion, and seeking on that ground a decree of divorce from the bond of matrimony. In this libel, and as subsidiary to it, probably for the purpose of anticipating and obviating a probable defence, and showing that the bond of matrimony still legally subsists, she sets forth a decree of divorce *a vinculo* for adultery, obtained by her husband, at a former term, against her; she then avers that the decree was obtained by fraud and false testimony, prays the court to hear evidence of the fraud and collusion by which the decree was obtained against her, and that the same may be reversed, annulled and set aside, and that such proceedings may be had as justice may require.

We can perceive no difference between the case where a libellant inserts such an allegation and prayer in an original

libel by which she seeks a divorce *a vinculo* on another ground, and a case where such allegation and prayer are made the only subject of an original libel to set aside a former decree. The object in both cases is to reverse and annul a subsisting decree.

In using the term "collusion" in the present case, we presume the libellant does not mean to use it in its ordinary sense, as collusion between the parties to the former proceeding, and so a fraud upon the law, because that would include herself as party to the fraud. As said by Willes, C. J. in *Prudam* v. *Phillips*, reported in a note to Hargrave's Law Tracts, 456, "if both parties colluded in the cheat upon the court, it was never known that either of them could vacate the judgment." We therefore understand this allegation as stating, that the husband colluded, or combined, with other persons, to obtain false testimony, or otherwise to aid him in fraudulently obtaining a decree. We are then to understand this libel as alleging that the former decree was obtained by the husband, by false testimony and fraud practised by him, and on that ground praying a reversal of a decree of divorce from the bond of matrimony, rendered by the same court, between the same parties, at a former term.

Such a libel, we think, cannot be maintained. When the court has jurisdiction of the subject matter and of the parties, when both parties are domiciled in Massachusetts, and the respondent actually appears and defends, or when it appears to the court that the adverse party has been so legally summoned as to be held legally in default, if he does not appear, and a decree is passed dissolving the bond of matrimony, and no appeal, exception or other step is taken to avoid the final judgment, we think it must in its nature be conclusive upon the parties. Whether such final decree is, by our law, open to any revisal, by review, writ of error, *certiorari*, or any other proceeding in the nature of an appeal, we give no opinion; no such question, we believe, has been judicially decided or raised. Nor does this opinion apply to any case where the fact of the existence of the matrimonial relation between such parties, at any particular time, is drawn in question between other parties.

Greene *v.* Greene.

We do not take into view a consideration sometimes adverted to in English cases, which is, that the fact and legality of marriage and divorce are in England exclusively cognizable in the ecclesiastical courts; we place our opinion upon the more general doctrine of *res judicata*, as settled in this commonwealth, and as applied to the case of divorce. We must inquire, then, what would be the consequences of any other decision? A binding decree of divorce *a vinculo* determines the *status* of the parties. If valid and effectual, the innocent party has a right to marry again. If the husband be the innocent party, his after marriage would be lawful, his wife would be entitled to dower and other rights of property, the children would be legitimate and entitled to inherit, and various other persons acquire or lose civil rights. If the decree is reversed, it must be for a cause that shows it ought not to have been rendered; the reversal relates back, and declares the decree void *ab initio*, and that the parties have never ceased to be husband and wife. The husband is then exposed to a prosecution for polygamy — we use this term rather than bigamy, because it is so used in the statute, Rev. Sts. *c.* 130, § 2 — which is a state prison offence; the wife has no right of property in the real or personal estate of the husband; the offspring are illegitimate; and creditors and others may lose rights of action. On such new hearing, the wife may bring new evidence to show that the evidence on which the former decree was rendered was false; or she may hope to persuade another tribunal, court or jury, as the case may be, that the evidence formerly adduced was not entitled to be believed, and so effect a reversal of the decree. And as there is no limitation of time within which such new and original libel must be filed, it may be after a lapse of months or years.

But if a new and original libel may be brought, upon the ground that a former decree was obtained by false evidence, we see nothing to prevent the husband from bringing a third suit to reverse the decree of reversal, on a suggestion and offer of proof that the decree of reversal was obtained by perjury, subornation of perjury and other fraud, and thus reverse the second decree, and reinstate the original decree of divorce *a vinculo*.

Consequences are not always conclusive against a rule of positive law; but where it is a question of construction, either of a statute provision, or a rule of the common law, the consequences, to which any particular construction or application would lead, have a strong bearing upon the question, what the legislature intended, or what is the just extent and qualification of the rule. To maintain an original libel, in a case like this, would seem to be contrary to the fundamental principles of judicial action.

But we think the point here is settled by authority, not specifically in regard to divorce, but generally as to the conclusive effect of a judgment, in a case arising afterwards, on the same matter, between the same parties. We take the rule to be, that a judgment of a court of competent jurisdiction, having jurisdiction of the subject and of the parties, by legal process duly served, where no appeal, writ of error, *certiorari*, review, or other legal process lies, for revising, affirming or reversing such judgment, or where no such process is commenced, by the party who would avoid the judgment, in the mode and within the time prescribed by law, is conclusive upon the same parties in any other proceeding in law, in equity, or before any other judicial tribunal.

Instead of numerous citations of authorities, we refer to *Homer* v. *Fish*, 1 Pick. 435, and the cases there cited. Some of the cases are certainly calculated to put the rule to a severe test; as that of *Peck* v. *Woodbridge*, 3 Day, 30, where false testimony and forgery were alleged, to impeach the former judgment; but the rule was enforced, on the ground of its being necessary to the administration of justice, that when cases are once finally decided, that must be held to be the end of litigation, between the same parties. The same rule is as steadily adhered to in chancery. In *Gelston* v. *Codwise*, 1 Johns. Ch. 195, it was said by Chancellor Kent: " If a decree could be altered or varied by an original bill, a cause, as it has been frequently observed, would never be at rest, and there would be confusion and inconsistency in the decrees of the court."

It is no good exception to show that the matter now offered

did not in fact come in question; such an exception, as said by Parker, C. J. in *Homer* v. *Fish*, would render the rule nugatory. It is sufficient, that the action was of a nature to admit of such a defence, and that the plaintiff in the new suit might have availed himself of it. 1 Pick. 441.

Most of the cases, supposed to have a contrary bearing, are those where the fact or the legality of a particular marriage has been drawn in question in a suit between third parties. The case of *The Duchess of Kingston*, most fully reported in 20 Howell's State Trials, 355, was an indictment for bigamy. The defence relied upon was, that before her second marriage, with the Duke of Kingston, her former supposed marriage was adjudged void, in a jactitation case in the ecclesiastical court; and her counsel insisted that that decree was conclusive. The opinion of the judges was taken by the House of Lords, which was, that such decree in a court of competent jurisdiction was conclusive between the parties, but not so in a suit between other parties; and that on an indictment it was competent for the crown to avoid the effect of the decree in question, by proving that it was obtained by the collusion of both parties, and a fraud upon the court; and such evidence was therefore received, and the duchess was convicted.

The article cited as one of Mr. Hargrave's Law Tracts, 451, was an argument prepared with a view to the trial of that case. The opinion of the judges affirmed one of the opinions maintained by Mr. Hargrave in his treatise, and disaffirmed the other.

In the case already cited, *Prudam* v. *Phillips*, Hargr. Law Tracts, 456, *note*, Lord Chief Justice Willes said, that "whatever objections would avoid a judgment in a court of common law, would be sufficient to overturn a sentence in the spiritual court, but none others; that fraud was a matter of fact, and, if used in obtaining judgment, was a deceit on the court and hurtful to strangers, who, as they could not come in to reverse or set aside the judgment, must of necessity be admitted to aver it was fraudulent. But who ever knew a *defendant* plead that a judgment obtained against him was fraudulent?"

31 *

The maxim that fraud vitiates every proceeding, must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been either actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be controverted. But a stranger may impeach a judgment which stands in his way, by plea and proof of fraud in obtaining it, because it is his only means of availing himself of the fraud.

There are several cases which have been supposed to have a bearing on this question, to which we will briefly refer. We have already noticed Hargrave's Law Tracts, and the case of the Duchess of Kingston.

The case of *Allen* v. *Maclellan*, 12 Penn. State Rep. 328, was an action of assumpsit, by an indorsee, on a note made payable to a woman, and indorsed by one professing to be her husband; it was contended by the promisor that he was not the true husband, and certain decrees in matter of divorce were relied on. It was not, therefore, a case between the parties to either decree.

*Colvin* v. *Colvin*, 2 Paige, 385, was a petition, by both parties, after a decree for a divorce had been enrolled, but, for aught that appears, at the same term, or at all events soon after, to open the enrolment and set aside the decree, the party originally charging adultery and claiming a divorce, stating his belief and conviction, from facts since come to his knowledge, that the adultery charged had not been committed. The petition was granted, on the ground that the party, though he had a right to a divorce, might waive that right, and that a condonation would take away that right, and restore the parties to marital relations.

*Dunn* v. *Dunn*, 4 Paige, 425, was a petition to set aside a decree of divorce entered on a bill taken *pro confesso*, on the ground that by service of an original subpœna, out of the jurisdiction of the court, in another state, the court did not acquire jurisdiction of the person of the respondent, and the decree, on the face of the proceedings, was erroneous. It proceeded on the ground that, for want of legal service, and without an actual

appearance, the court had no jurisdiction. And the chancellor says: " If the court of chancery has once acquired jurisdiction over the party, by the service of original process within the jurisdiction of the court, or by his voluntary appearance, the decree, or any order in the cause, may be served on the defendant out of the jurisdiction." And in another passage he says, " the vice chancellor was right in deciding that the service of a subpœna at Newark (N. J.) was not sufficient to warrant the entry of an order to take the bill as confessed for the want of appearance." The court therefore, though they had jurisdiction of the subject, had not, by legal process, acquired jurisdiction of the person of the respondent.

We have seen no reliable authority opposed to the position above taken, that a decree of divorce *a vinculo*, where no appeal, review or writ of error is allowed by law, or when the time for bringing such review or writ of error has expired, is final and conclusive upon the parties, and that an original proceeding to set it aside, on the ground that it was fraudulently obtained, upon false evidence, cannot be maintained.

*Libel dismissed.*