WHITCOMB v. WHITCOMB.

1. **Divorce**: JURISDICTION: TEMPORARY RESIDENCE. A temporary resi-
dence, selected with any other intention than that of making it a per-
manent domicile, is not sufficient, even if extended to the length of time
required by statute, to give the court jurisdiction of a proceeding for
divorce.

2. ———: DECREE OBTAINED BY FRAUD. The falsification of the testi-
mony of witnesses taken before the commissioner, to which the plaintiff
was a party, together with the concealment of the proceeding from
the defendant, with whom the plaintiff was in constant correspondence
while the action was pending, justifies the conclusion that the decree
was obtained through fraud.

3. ———: DEFAULT: SERVICE BY PUBLICATION. The statute providing
for setting aside defaults granted upon service by publication only has
no application to proceedings of divorce.

4. ———: EQUITABLE JURISDICTION: WHEN DECREE WILL BE SET ASIDE.
A court of equity will entertain an action for alimony though no divorce
is sought, and has power to vacate a decree obtained by fraud, even
though the plaintiff may have subsequently married and become a
parent, when such marriage could not have been prevented by any dili-
gence on the part of the party seeking relief.

*Appeal from Chickasaw District Court.*

TUESDAY, SEPTEMBER 18.

ON the 14th day of October, 1872, plaintiff filed his petition
in the District Court of Butler county, claiming a divorce
from the defendant. The petition charged the defendant with
adultery committed with one A. B. King, and such cruel and
inhuman treatment as to endanger the life of the plaintiff.
There was service of the original notice by publication.

On the 30th day of October, 1872, after entering the default
of the defendant, it was ordered that the venue in the cause be
changed to the Floyd county District Court, and J. W. Woods
and W. A. Lathrop were appointed commissioners to take and
report the evidence in the case.

On the 4th day of December, 1872, the evidence was reported
to the Floyd county District Court, and after being duly ex-
amined, it was found by the court that all the material allega-

tions in the petition were sustained and proved, and a decree of divorce was entered.

On the 13th day of November, 1873, the defendant, Roana Whitcomb, filed a petition in the District Court of Floyd county, asking that the said decree of divorce be declared null and void.

After alleging certain irregularities in the manner of the service of the original notice in the divorce proceedings, the petition in substance charges that the decree of divorce is void because neither the plaintiff nor the defendant ever had any *bona fide* residence in Butler county; and that, therefore, the court did not have jurisdiction of the person of the defendant.

It is further charged that said decree was obtained by the fraudulent acts of the plaintiff, as follows: He procured J. W. Woods, commissioner, to report the testimony of all witnesses sworn before him falsely; that none of said witnesses testified before said Woods to any facts tending to prove that the defendant had ever committed adultery with A. B. King or any other person, or had ever treated plaintiff unkindly; that the testimony of plaintiff on file and presented to the court, so far as the same states any facts tending to show that defendant committed adultery with A. B. King, or any other person, or that defendant ever treated plaintiff unkindly, is false.

It is alleged that defendant lived and co-habited with plaintiff up to the date of the decree of divorce. Every other material allegation of the petition for divorce is denied.

It is further averred that plaintiff and defendant took up their residence upon their homestead in Bremer county, Iowa, about three miles from Waverly, in 1864, and carried on the business of farming at that place until November, 1871, when they left together for the state of New York; that they both remained there for a time visiting relatives until about January 1, 1872, when plaintiff returned to Bremer county, remained a short time and again went to where defendant was staying in New York, and there remained for about two months and a half, when he again returned to Bremer county; that about July 10, 1872, plaintiff again went to defendant in New York

and remained about three weeks; that during plaintiff's absence from defendant they corresponded as husband and wife, up to November 29, 1872; that such correspondence was of the most friendly character and such as is usual between husband and wife; that during all their joint stay in New York the parties lived and cohabited together as husband and wife; that plaintiff fraudulently concealed the divorce proceedings from defendant, and she knew nothing of said proceedings until long after the decree was entered.

In addition to the prayer for setting aside said decree, it is asked that defendant may be decreed temporary and permanent alimony.

The answer to this petition is a denial of the nullity of the divorce proceedings, and an affirmance of the court's jurisdiction. There is an amended answer in which it is averred that after the decree of divorce, and before the institution of this proceeding, plaintiff was married to one Rachel Patterson, with whom he has ever since and now is living, and by whom he has one child now living.

On the 26th day of November, 1873, plaintiff filed in said Floyd District Court the necessary affidavits as to the prejudice of the district and circuit judges of that district, and the venue was changed to the District Court of Chickasaw county.

On the 10th day of November, 1874, Cyrus Foreman was appointed referee to take the testimony in writing, try the case and report the facts found and conclusions of law, together with the evidence, to the court.

The trial was had before the referee and report made to the court, upon which a decree was entered finding that the District Court of Floyd county had no jurisdiction to hear, try, and determine the question of divorce prayed for in the original petition, and had no jurisdiction of the defendant, Roana Whitcomb, to grant a decree of divorce against her, or bind her in any manner. And said decree further found that the decree of divorce was obtained by the fraudulent acts of the plaintiff and was null and void; that said Abel Whitcomb

had cohabited with another woman as his wife since said decree so fraudulently obtained.

Temporary alimony in the sum of $750, and permanent alimony in the sum of $1500 was decreed to the said Roana Whitcomb, and the costs of this proceeding, amounting to $405.28, were adjudged against the plaintiff. Plaintiff appeals.

*B. W. Poor* and *G. C. Wright*, for appellant.

*Starr, Patterson & Harrison*, for appellee.

ROTHROCK, J.—I. The cause is here for trial anew. It is satisfactorily established by the evidence that the parties were married at Jefferson county, New York, in January 1855. Shortly afterward they took up their residence at Cleveland, Ohio, where they remained until the year 1864, when they removed to Bremer county, in this State, where they continued to reside together as husband and wife, upon a farm owned by the plaintiff, until the year 1871. In the fall of that year they had a personal quarrel, and the defendant left the farm and went to a neighbor's house where she remained some six weeks. During this time plaintiff frequently visited defendant and solicited her to return to her home, promising to demean himself better towards her in the future. It was finally agreed that defendant should return to their home, and that they should rent out the farm and go back to Jefferson county, New York, visit their relatives and friends for a time, and in the meantime sell out the farm and go into other business. In pursuance of this arrangement the defendant returned to her home. They sold off some things and packed up such as they intended to take with them. After arriving at the depot the plaintiff said the boxes containing the goods were not secure enough to ship, and they were not then and never afterward were shipped, but were taken back to the farm.

At Dubuque, on their route east, the plaintiff exhibited a deed which he represented to be a conveyance of their land to certain parties, and desired her signature thereto. She

refused to execute it, but after threats of desertion she did sign and acknowledge the same. The deed afterward proved to be a conveyance by defendant to plaintiff of any interest she had in the plaintiff's land in Bremer county.

The parties arrived at their relatives' in Jefferson county, New York, December 5, 1871. The plaintiff remained there until about January 1, 1872, when he returned to Bremer county, as he stated, to look after the money for which he claimed he had sold the farm. He went back to New York the last of January, 1872, and remained until April 1st, following, when he again returned to Bremer county, stating that the purchasers of his farm failed to complete the purchase, and that he must return to buy seed wheat for his tenants, and make repairs upon the house, fences, orchard, etc. He again went to New York in July, 1872, and remained with defendant two or three weeks. While there at this last time he was talking of selling out the farm, but did not fix upon any place as a future residence. He left New York July 27, 1872, and again returned to Bremer county, stating that as he could not then get possession of his farm he would go back to New York about the beginning of the next winter, when his wife could return to Iowa with him. During all the time that the parties were in the State of New York they lived agreeably and cohabited as husband and wife. During the absence of plaintiff in Iowa there was a friendly correspondence kept up between them. The farm in Bremer county, where the parties resided, was three miles from the city of Waverly, and all of the plaintiff's letters to defendant were dated and mailed at Waverly, and defendant's letters to plaintiff were directed to Waverly by his direction. The last letter written by him bears date Nov. 29, 1872. In all these letters no mention was made of any proceedings for divorce, and the defendant did not know of such proceedings until after the decree was obtained.

The plaintiff, when he leased his farm for the year 1872, reserved one room in the dwelling house where he kept some household goods. A portion of the time after the month of July he was at Shell Rock, in Butler county, six miles from

Waverly. Two witnesses testify that he was then engaged in the brewery business, in which he had a half interest. They do not state how he acquired his interest or what he paid for it. He gives no particulars in his own testimony as to what he was engaged in at Shell Rock, or why he was there—only states generally that his residence was there in the summer and fall of 1872. A very short time after the decree for divorce was obtained, he returned to his farm near Waverly where he has ever since resided. He stated to one of the witnesses that he was staying at Shell Rock in order to gain a residence, that he might procure a divorce. In his testimony he does not deny that he made this statement.

The evidence upon which the decree of divorce was obtained consisted of the testimony of the plaintiff, and some six other witnesses. The plaintiff testified that he had reason to believe in September, 1871, that there was an improper intimacy between defendant and A. B. King, and that after that time he had no intercourse with defendant. The testimony of all the other witnesses was taken before Woods, the commissioner appointed by the court for that purpose. The tenor of the testimony of these witnesses shows acts of the defendant and A. B. King, from which criminal intimacy might be inferred. But all of these witnesses now testify that their testimony as reported by Woods was not correctly taken down and read over to them, but that the same was in a large part falsified and forged. The substance of the testimony of all these witnesses now is, that in their former testimony they did not impute a want of chastity to the defendant, and knew nothing to justify such an imputation against her. The plaintiff was present when the testimony of these witnesses was first taken, and he and the commissioner testify that the testimony of the witnesses was fairly and truly taken down. The plaintiff unquestionably testified falsely when he stated that he ceased to cohabit with defendant in September, 1871. He is contradicted by several witnesses, and there can be no doubt that such cohabitation continued to the latter part of July, 1872. In view of this false statement, and his other questionable acts in this case, a part only of which we have

detailed, it would be a wonderful stretch of credulity to give his testimony any weight whatever. We believe it to be shown by an overwhelming preponderance of evidence that the testimony of these witnesses was untruly and falsely reported to the court.

The decree of divorce was entered December 4th, 1872, and the plaintiff was married to Rachel Patterson, at Watertown, New York, on the 7th day of January, 1873. There is a child now living, the issue of this marriage.

We have given an outline of what we believe to be established facts in the case. There are many other acts of the plaintiff, of minor importance in themselves, but when taken together with the facts herein detailed, point to but one conclusion, and that is, that plaintiff took his wife to New York and there left her with the fraudulent intent to procure a divorce without her knowledge. The length of this opinion forbids that we should further refer to these facts. That she was not guilty of adultery is abundantly shown, or rather, as the case is presented to us, there is no evidence of such guilty conduct on her part.

The laws of 1870, page 168, provided that: "The District Court, in the county where the plaintiff or defendant resides, has jurisdiction of all cases of divorce and alimony, and of guardianship connected therewith." This was in force so far as the necessary residence was concerned, at the time the petition for divorce was filed. We think that the evidence shows that neither of the parties ever had a residence in Butler county. The word residence as here used does not mean a mere temporary abiding place, much less a place selected by the party for the purpose of procuring a divorce. In *Hinds v. Hinds*, 1 Iowa, 36, Justice Wright, in an opinion remarkable for its research and clearness, after a full review of the authorities, concludes that the statute then in force, providing for six months residence in the state in order to give jurisdiction in divorce proceedings, means, " a legal residence, not an actual residing alone, but such a residence as that when a man leaves it temporarily, or on business, he has an intention

1. DIVORCE: jurisdiction: temporary residence.

of returning to, and which when he has returned becomes, and is, *de facto* and *de jure*, his domicile, his residence.

"There must be a fixed habitation, with no intention of removing therefrom."

We think the evidence in this case, instead of showing a fixed habitation at Shell Rock, only shows that it was a temporary abiding place, selected as an aid in procuring a divorce; and that the commencement of the suit in Butler county was an attempt to impose jurisdiction upon the court in that county which it did not possess.

II.  We are also of opinion that the facts which we have herein recited as established by the evidence conclusively show that the decree was obtained by the grossest fraud upon the part of plaintiff.  We need not again recite these facts.  It is enough to refer to the falsification of the testimony of the witnesses, and the studied concealment of the proceedings from the defendant in the friendly letters which were written, some of them during the pendency of the suit.

2. ——: decree obtained by fraud.

III.  It is insisted that the evidence impeaching the report of the evidence taken by the commissioner is not competent. We are clearly of the opinion that such evidence is competent to impeach the decree for fraud.  It is sufficiently shown that plaintiff was a party to the falsification of the testimony.

IV.  Appellant urges that this proceeding ought not to be entertained, because plaintiff should have applied for a new trial, as provided by the statute in cases where the service has been made by publication.  It was held in *Gilruth v. Gilruth*, 20 Iowa, 225, that the statute referred to has no application to proceedings for divorce.

3. ——: default: service by publication.

V.  The object of this proceeding is twofold.  It seeks to set aside the decree of divorce for want of jurisdiction and fraud, and also to recover alimony of the plaintiff. A decree of divorce is not asked against the plaintiff.  That a court of equity will entertain an action brought for alimony alone, though no divorce or other relief is sought, when the wife is separated from the husband

4. ——: equitable jurisdiction : when decree will be set aside.

on account of conduct on his part justifying the separation, was determined by this court in *Graves v. Graves*, 36 Iowa, 310. In that case the husband set up in his answer a decree of divorce obtained in Polk county, and the plaintiff replied that the decree was obtained by fraud, and that the court had no jurisdiction of the parties. It was held by this court that "The alleged decree of divorce, obtained by the husband, was without any notice to the wife, in a county wherein neither party ever resided, and for an alleged cause wholly fraudulent; it is therefore void."

In *Edson v. Edson*, 108 Mass., 590, a case where a husband obtained a divorce from his wife at a former term of the court, by false testimony, on a libel of which she had no act-, ual notice, knowledge of which he fraudulently kept from her, and of which the court had only apparent jurisdiction founded on his false allegation of domicile, it was held that the court had power to vacate the decree upon a petition for that purpose.

In *Adams v. Adams*, 51 N. H., 588, it was held that courts have the same power over judgments and decrees in divorce suits as in other cases, and will vacate and set aside a decree that was obtained by fraud or imposition. To the same effect see Bishop on Marriage and Divorce, Sec. 697.

Such seems to be the decided current of authority, and there is no statute in this state to prevent the operation of such rule here. It is true that in some of the cases, where there has been a subsequent marriage and the rights of innocent third parties are involved, courts have held that there must be a clear case of fraud, or want of jurisdiction, to warrant the vacating of the decree.

In this case the plaintiff was again married in about one month, and the first reliable information that the defendant obtained of the divorce proceedings was the fact of the marriage of plaintiff and Rachel Patterson. It certainly cannot be claimed that this marriage could have been prevented by any diligence of the defendant in filing her petition. The proof of fraud and imposition is of the clearest and most satisfactory character.

It is argued that the decree of the court below vacating the decree of divorce should be reversed, because of the effect upon Rachel Patterson and her child. Courts find many cases of hardship in which sympathy is invoked for the suffering of the innocent because of the wrongs of others, but it must be remembered in this case that whatever of suffering and disgrace the innocent child may in the future endure, it is not imposed by the law, but by the wrongful acts of plaintiff. We must declare the law as we find it, regardless of the consequences to individuals. We have no authority to mould it in accordance with our sympathies.

VI. There are certain irregularities in the manner of the service by publication in the original proceedings which we need not discuss. The decree of divorce must be held void for the reasons herein given.

VII. Finally, it is urged that the allowance for alimony is excessive. Taking into consideration all the evidence as to the property of plaintiff, we are not disposed to disturb the allowance made by the court below. Neither can we remand the cause for a re-taxation of costs. No showing is made that the costs are excessive. If any cause exists for such motion, it can be made in the court below, without remanding the case.

Appellee asks for an additional allowance in this court. We think that already made is sufficient.

AFFIRMED.