## No. 1117.

### M. L. BRYANT VS. E. S. AUSTIN, EXECUTOR.

The Supreme Court has jurisdiction of an action for the nullity of a judgment of divorce, although no pecuniary amount is in dispute.

A judgment of divorce obtained by one of the spouses against the other, who is absent from the State, will be annulled if the party who has obtained it has used fraud or ill practices.

APPEAL from the Fifth District Court, Parish of Ouachita.
Richardson, J.

R. Ray, D. C. Morgan and B. W. Johnson for Plaintiff and Appellee.
Stubbs & Russell for Executor, Appellant.
C. H. Trousdale for Absent Heirs, Appellant.

### MOTION TO DISMISS.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff brings this suit for the nullity of a judgment of divorce rendered in favor of her husband, since deceased.

As appellee she moves for the dismissal of this appeal on the ground of our want of jurisdiction ratione materiae.

Her contention is that the pleadings disclose no pecuniary amount in dispute and that this is not a suit for divorce or separation from bed and board. It cannot be denied that under the terms of the Constitution, this Court has jurisdiction of an appeal from a judgment of divorce. Now, an appeal is one of the modes of revising or reversing a judgment. And an action of nullity is another mode. C. P. Art. 556.

If the Supreme Court has jurisdiction by appeal over an action for divorce, it is difficult to conceive by what process of reasoning the same court could be deprived of jurisdiction over an appeal from an action for the nullity of a judgment on the same cause of action.

We hold that this Court has jurisdiction in the premises, and hence, the motion to dismiss is denied.

### ON THE MERITS.

The grounds of nullity urged by plaintiff are substantially that the judgment was obtained by her late husband by fraud and other ill practices.

Bryant vs. Austin.

The record contains a considerable mass of irrelevant testimony, and contains several bills of exception levelled at the admission of a great part of the same.

The undisputed relevant facts of the controversy are as follows:

Plaintiff was married to the late M. M. Bryant, who was then a resident of the parish of Ouachita, Louisiana, in March, 1868, in Camden, Arkansas, the place of her residence.

A short time thereafter the husband returned to Louisiana, leaving his wife in Camden, whence she came to join him in March following. He was a mechanic whose occupation, on different plantations, allowed him little or no opportunity to remain at home. His wife remained with him nine months; at the end of which time, with the consent of her husband, she returned to her former home, with the understanding that she would return to Louisiana as soon as her husband wished it, or as soon as he could provide a suitable home for her.

In May, 1871, at his request, she came back but remained only a few days, as her husband had not yet procured a home, and as he requested that she would go back to Camden and remain there until he could make proper arrangements for their living together. During the time of their separation they corresponded together until September, 1878, when the husband ceased writing.

In November, 1878, he filed his suit for separation against his wife, on the ground of abandonment, which culminated in a final judgment of divorce, in October, 1880.

In his petition he alleged that his wife, who had abandoned the matrimonial domicile, was absent from this State and to the best of his information, she was living in the State of Arkansas.

The proceedings were carried on contradictorily with an attorney appointed by the court to represent the absent wife, and all the requirements of process were complied with. But the wife was not informed of the proceedings, and had no knowledge of the suit or judgment until October, 1882, at the same time that she heard of her husband's death.

The attorney of the absentee, immediately after his appointment, inquired of the husband, Bryant, for the address of his wife, and he was informed that she was somewhere in Arkansas, her precise locality being unknown to Bryant, as he stated. The record shows, to our entire satisfaction, that Bryant knew perfectly well, that his wife was then, as she had always been since 1871, in Camden, where he had married her, and where he had left her in March, 1868, whence she had come

to him in March, 1869, where she returned in December, 1869—where she had remained until 1871, in May, at which time she had come back to this place to live with him; to which place she had returned in obedience to his wish and his advice and to which place he had directed his letters to her until September, 1878, only two months before the institution of his suit for divorce.

With this knowledge he designedly omitted to inform his own attorney of the place where she was sojourning, and for the same purpose he refused to give correct information to the attorney of the absentee. The evidence shows conclusively that his wife had the one great and constant desire to settle down and live with him as his wife.

His letters to her show that in her letters she was constantly and persistently pressing and urging him to make the necessary arrangements to that end—and he would invariably detail numerous reasons for an indefinite postponement of the project of their reunion. Avowedly he had no complaint to make of her conduct or of her character, for he said of her to one or two of his few intimate friends that she was "a nice little woman."

But he evidently regretted his marriage with her, and the study of his life was to devise a plan to forsake and abandon her. His object, in the suit for separation, was to make sure, in his own language, that she would get none of his property.

Our reference to these facts is not with a view to revise the judgment of separation on its merits, but merely to define his animus in practicing the deceit which he used towards the attorney of the absentee.

Had he informed the latter of the exact locality of his wife as he knew full well, the attorney would at once have corresponded with her and his whole plan would thus have been thwarted and defeated. We do not mean to exonerate the attorney of his neglect in not continuing his researches for the place where the wife could be reached. But we do hold, under the evidence, that the information given him by Bryant, that his wife was somewhere in Arkansas, he did not know where, was the determining reason of the attorney's supineness in the premises.

Under the textual provisions of our law " a definitive judgment will be annulled in all cases where it appears that it has been obtained through fraud or other ill practices on the part of the party in whose favor it has been rendered." C. P. Art. 607.

Marriage is a contract highly favored by our laws, with which it has been wisely shielded by provisions which cannot warrant or sanction attacks of a fraudulent character on an institution which is the very basis of society and of all well regulated governments.

Bryant vs. Austin.

The dissolution of marriage is not tolerated for trivial causes, and *a fortiori* by offensive and fraudulent practices.

It may be said that these principles are of universal jurisprudence, hence it is that courts have never hesitated to reprobate in unqualified terms and to formally annul all judgments of divorce which have been obtained by means of deceit and fraud. Adams vs. Adams, 51 N. H. 388; Bishop on Marriage and Divorce, sections 697, 699, 700, and authorities therein quoted.

In the case at bar the evidence is conclusive that fraud and deceit were practiced on the court which rendered the judgment, which could not have been obtained without the intentional concealment by the husband of the locality where his wife was then sojourning.

Defendant has pleaded the prescription of one year, but he has apparently abandoned that defense as his counsel have not mentioned it either in the oral argument or in their brief. It is absolutely groundless. The first knowledge of the judgment was obtained by plaintiff in October, 1882, and her present suit was instituted in January following.

Defendant's objection to the letters of Bryant, as evidence, on the ground that they were confidential communications between husband and wife, is met by the consideration that the bonds of matrimony have been severed by the death of Bryant, and by his own theory that they had ceased to be husband and wife since the judgment of divorce had been final. We gave no consideration to the statement of plaintiff touching the contents of lost letters.

An exhaustive consideration of the issues in the case, of the legal evidence in the record, and of the law bearing on the same, has satisfied us that the district judge had done impartial justice between the parties.

Judgment affirmed.

### Concurring Opinion.

MANNING, J. If five words be omitted from the record of this case, the judgment must inevitably be for the defendant. They are—"he did not know where"—and occur in the testimony of the attorney for the absent wife in the divorce suit. They are the sole foundation in support of the charge of fraud and ill-practice on Bryant's part in that suit. The proceedings in that suit were exceptionally regular and in strict conformity to the requirements of our practice, and I have therefore hesitated before giving my concurrence in the decree of the Court.

The declaration of Bryant, in answer to the question of the attorney appointed to defend his absent wife, from whom he was seeking a

divorce, that he did not know where she was, when he did know, would not be to my mind sufficient of itself, and without any other circumstance, to turn the scale in ordinary suits. But in the interest of public order I recognize that suits for divorce against absent spouses, who have only technical and not actual notice of the existence of the suit, should be confined to the strictest rules, and that the rights of such absent defendants should be jealously guarded.

I therefore concur in the opinion and decree.