## MULLIGAN v. MULLIGAN.

1. SETTING ASIDE RULES OBSERVED FOR MANY YEARS THAT IMPEDE JUSTICE.

Courts inherently have the right to protect themselves and the public from fraud and perjury; hence, neither question of public policy nor rule of court which protects and encourages perjury and fraud can be permitted perpetually to impede justice, notwithstanding such rule has been observed for more than a half century and that courts reluctantly upset well-established rules.

2. DIVORCE DECREE SET ASIDE AFTER TERM FOR FRAUD AND PERJURY.

A decree of divorce obtained by fraud and perjury, on the facts being shown, may be set aside after the term at which the divorce was granted, and notwithstanding remarriage of the guilty party.

[Syllabus approved by the court.]

ERROR to Mercer common pleas court.

**HURIN, J.**

On March 5, 1907, Maggie Mulligan filed her petition in this action seeking to have set aside a decree of divorce obtained against her by her husband, the defendant, at a former term of the court of common pleas.

In her amended petition, subsequently filed, she alleges that that decree was obtained by fraud and perjury, in this, that her husband was not, at the time of filing his petition for divorce, a *bona fide* resident of Mercer county, and had not been a resident of the state for one year prior to the filing of his petition; that she had no actual notice of such action in time to make her defense, that no other service was sought to be had upon her than by publication in a newspaper. She alleges that she did not discover said facts during the term or terms in which said action was pending, nor until the twentieth of November in the following year, and that she could not, with reasonable diligence, have discovered such facts. She alleges that Frank Mulligan at all times knew the address and place of residence of this petitioner and that the allegation of his affidavit for service by publication that "the residence of the defendant, Maggie Mulligan, is unknown and cannot with reasonable diligence be ascertained," was false.

She alleges that said Frank Mulligan practiced fraud and suborned witnesses in obtaining his decree of divorce; that the allegations of his petition as grounds for his divorce are false; she admits that she has

been separated from him by reason of his aggression; that she is the mother of his two living children and of one who has died, and she files a full answer setting up her defense to his action for divorce and asks that the decree of divorce be vacated and set aside and that she may be allowed to defend.

A demurrer to this amended petition was sustained and the amended petition dismissed, and plaintiff, not desiring to plead further, prosecutes error to this court.

The original petition for divorce was filed April 12, 1905. It appears from one of the pleadings that the entry decreeing the divorce was probably dated June 17, 1905.

Plaintiff says in her petition that she did not learn of that decree until November 20, 1906. Her petition to set aside the decree was filed March 5, 1907, more than one year and eight months after the granting of the decree. It is not properly before us by any allegation of pleadings but it is said by counsel in argument as one reason for not granting the prayer of the petition, that the original plaintiff has married again and hence that the rights of his present supposed wife ought not to be interfered with.

Section 5354 Rev. Stat. provides that "the common pleas court, or the circuit court, may vacate or modify its own judgment or order, after the time at which the same was made:

"1. By granting a new trial for the cause within the time and in the manner provided in section 5309 (and that section limits such action to one year after the final judgment was rendered and not more than two terms after the discovery,—evidently not applicable to this case at bar).

"2. By a new trial granted in proceedings against defendants constructively summoned, as provided in section 5048 which provides for the service by publication.

"3. For fraud practiced by the successful party in obtaining judgment or order."

Both of the two subdivisions last cited are apparently applicable to this case, as is also Sec. 5355 Rev. Stat. which provides:

"A party against whom a judgment or order has been rendered without other service than by publication in a newspaper, may, at any time within five years after the date of the judgment or order, have the same opened, and be let in to defend; but before the judgment or order can be opened, the applicant shall give notice to the adverse party of his intention to make the application, and shall file a full answer to the petition, pay all costs, if the court require them to be paid, and

Mulligan v. Mulligan.

make it appear, to the satisfaction of the court, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense; and each party may present affidavits,".

It is under this section apparently that the action has been brought and its provisions have been fully complied with by the present petitioner.

In its terms this section is clear and explicit and apparently applicable to all cases of every kind where no other service has been obtained than by publication. But for some reason, wise or otherwise, the legislature and the courts of this state have, for a long time, treated divorce suits as if governed by a separate rule and reason from all other suits.

The allegations of the petition in a divorce proceeding are not required to be verified. Distinct rules as to costs distinguish such suits generally from other suits; and it has been held that this statute, clear and explicit and of universal application as it appears to be, must not be held to apply to divorce suits.

The reason on which all of these judicial decisions are based is that public policy requires that a "decree which affects directly the status of married persons, by sundering the matrimonial tie, and thereby enabling them to contract new matrimonial relations with other and innocent persons, should never be reopened." See *Parish* v. *Parish*, 9 Ohio St. 534, 537 [75 Am. Dec. 482].

This principle was first applied to divorce cases in this state in the opinion of Judge Lane in the case of *Bascom* v. *Bascom*, 7 Ohio (pt. 2) 125. He supports his conclusion by reasoning regarding the different forms of testimony in chancery cases and divorce cases,—reasoning which would have but little weight under our present practice,—but the only reason relied on apparently is that of public policy, which, without discussion, he assumes to be against the granting of any relief to the injured party in divorce cases. That case was followed in the case of *Laughery* v. *Laughery*, 15 Ohio 404, but without discussion and merely as decisive of the question as to the appealability of a divorce case,—a question now settled by statute.

Both the cases of *Bascom* v. *Bascom* and *Laughery* v. *Laughery*, *supra*, were cited and relied upon in the case of *Tappan* v. *Tappan*, 6 Ohio St. 64,—not to determine the question here at issue,—as to the right of a court which has granted a divorce to reopen the case on notice of fraud and perjury in obtaining the decree,—but to support the holding that there can be no review in Ohio by a higher court of a decision of a lower court granting a divorce,—a proposition not now before us.

Mercer County.

Judge Scott, however, in an *obiter dictum* in *Tappan* v. *Tappan, supra,* states on page 67, that "these cases may be regarded as settling the question that, as the law then stood in Ohio, the decision of the court on the hearing of a petition for divorce was final, and beyond the reach of judicial revision." Even this statement of the law, though going beyond the question before the court at that time, and therefore not to be regarded as conclusive, would not necessarily be applicable to the law as it has since been amended; and, in his subsequent discussion in that case, Judge Scott proceeds to point out defects in the then existing law in certain respects and his views have since been embodied by the legislature in the law as it stands today.

But in the case of *Parish* v. *Parish, supra,* the question now before us was squarely met by the Supreme Court, and the case was decided upon that issue alone, the facts of that case being practically identical with those in the case at bar.

In that case, after a careful review of the authorities Judge Peck concludes as follows:

"We therefore feel compelled, though reluctantly, to hold that sound public policy in this class of cases, forbids us from setting aside a decree of divorce *a vinculo,* though obtained by fraud and false testimony, on an original bill filed at a subsequent term."

It is evident from this quotation that the Supreme Court realized the extreme hardship which its decision would entail on innocent wives and children deserted by unscrupulous men who, without their knowledge, had procured the protection of judicial decrees annulling their former marriages. It is perhaps significant that at the very time this decision was rendered the legislature had already modified the statute relied upon by that court as showing that, at the time the divorce in that case was obtained, it was final. From page 537 of that opinion I quote:

"The statute of March 14, 1843, conferring jurisdiction in divorce cases upon the courts of common pleas, which was in force when these proceedings were had, provides that 'no appeal shall be obtained from the decree, but the same shall be final and conclusive.' 2 Curwen 991."

It is significant, I say, that the last clause quoted, viz., "but the same shall be final and conclusive" had already been expunged from the statute (see 51 O. L. 377; S. & C. 514) and has never since been incorporated in the statutes of Ohio.

But, to continue the quotation, the court, referring to the statute as it had formerly stood, proceeds,

"This statutory provision is nothing more than a legislative recog-

Mulligan. v. Mulligan.

nition of the principle of public policy, which had been repeatedly affirmed by the courts, that a judgment or decree which affects directly the status of married persons by sundering the matrimonial tie, and thereby enabling them to contract new matrimonial relations with other and innocent persons, should never be reopened. Such a course would endanger the peace and good order of society, and the happiness and well-being of those who, innocently relying upon the stability of a decree of a court of competent jurisdiction, have formed a connection with the person who wrongfully, perhaps, procured its promulgation.''

This presents to us in carefully chosen language the grave reasons which influenced that court in holding that a decree of divorce, obtained at a former term of the court which was asked to set it aside, could not be set aside or annulled.

We cannot fail to recognize the gravity of the question. Yet there is another side which we must also consider. In cases such as *Parish* v. *Parish, supra,* and the case at bar, there are other innocent persons involved,—the innocent wife and children of the perjured husband. Shall it be said that public policy demands that the wife, who for ten or perhaps twenty years has lived with her husband and borne children to him, has no rights which he may not avoid by quietly slipping off to another county and there swearing that he does not know her address? Has an affinity greater rights than a wife? Are the interests of a man's children less sacred than those of his paramour?

Suppose a case! A man has lived with his wife many years,—in the city of Cincinnati, say. When she has lost some of her youthful charm, he tires of her and finds a younger and fairer charmer. He explains to his wife that he is interested in oil leases in Wood county, say, which will for a few weeks require his attention. He bids her an affectionate good bye and betakes himself to Wood county where he actually engages in the oil business. He writes to his wife constantly and affectionately and occasionally runs home and spends a day with her. But in Wood county he lets it be known that he is located there permanently and his occasional absences are not noticed. In a few weeks he files his petition for divorce, swearing that he does not know his wife's residence or address. He obtains service by publication, but the papers of that county do not circulate in Cincinnati and his wife never hears of the suit. On the last day of the term his case is tried, a divorce is granted on perjured testimony and the court adjourns. His wife has heard nothing of these proceedings and still supposes that she is his wife. Six months or a year later she is confronted by her successor—who has been conniving with and probably living with her

Mercer County.

husband during most of these proceedings,—and is then told for the first time that she is no longer a wife; and that the public policy of this great country forbids that the sacred rights of her husband's new wife should be interfered with by anything that she can do. Is this a mere dream,—an imaginary case? In almost all of its essential facts it is but a recital of a case that actually occurred within the writer's professional experience. But in that case the wife did accidentally hear of the proceedings just in time to prevent the entry of the decree,— and the husband suddenly and wisely disappeared. Had she been but a few days later in getting her information she would, under the authority of *Parish* v. *Parish, supra,* have been wholly without remedy.

There seem, then, to be two sides to the question. Public policy has grave responsibility resting upon it.

On the one side must be regarded the rights of the first wife and her children,—rights guaranteed to them by all the formalities and legal safeguards which the law can provide. That wife has been married under a license issued in behalf of the state with rigid requirements as to how it should be obtained; her marriage has been formally performed and registered; she has openly lived with her husband as his wife in the face of all the world. Her children have been acknowledged by him as his; she has vested interests in his property and a vested right in his services for her support and the support of her children. Must she, after all this, watch him at her peril and see to it that he never leaves his home and remains away a week or a month at a time no matter what his business may require? Must she never permit him to send her off with the children for fresh air and rest, under peril of finding herself deposed and her children fatherless on her return? Is she to live in constant fear that some day she will receive a newspaper clipping from a county of which perhaps she has almost never heard announcing his divorce and remarriage on the same day and then learn that because the court on that same day adjourned for the term, the decree is final and she is helpless? If ill-health requires her to go to a hospital or a sanitarium for treatment, must she enter its doors with the fear haunting her that when she recovers her physical strength and returns to her home, it will be to find another woman installed as wife and mistress of the household and this under the full sanction of the law? That is the meaning to her of the case of *Parish* v. *Parish, supra.* That is what public policy is there said to do for her.

But much may be said on the other side. Where an innocent woman marries a man whom she has known perhaps for a year or for

Mulligan v. Mulligan.

two or three years and has had no reason to suspect that he ever had a wife; when he tells her that he has lived where he never did live, or otherwise conceals his past; or where, possibly, he finally admits that he·has been divorced and tells her truthfully that service was obtained by publication, but tells her also that his former wife had deserted him and that he knows nothing of her whereabouts. Suppose she investigates and finds nothing which discloses the true state of facts. What are her rights? Is she to be turned out of her home years after her marriage? Are her children to be declared illegitimate by a decree setting aside her marriage and the divorce from the former wife?

We frankly admit that we have sought in vain for a solution of this question which will do justice to both of these victims of this perjured husband,—for by the demurrer he is admitted, for the purposes of this case, to be all that and more too,—whatever the fact may be as to the truth of these charges of perjury and fraud.

But the question in this case goes further: Suppose that in fact there was no fraud and no perjury on the part of the party obtaining the divorce; suppose that the grounds alleged in the petition were all true; suppose that the residence of the defendant in fact was not known; suppose that it is the former wife who, angered at the present happiness of her former husband, now seeks to harass him by false and fraudulent claims! What then? Should the innocent party, having married again, be subjected to a retrial and his rights and those of his new wife be jeopardized?

But here it must be said that there is better protection against fraud and perjury; for the law requires actual notice of the pendency of this application for a reopening of a case and gives every possible safeguard against fraud. Moreover, it requires an actual trial before the decree can be reopened with ample opportunity for proof, and if the charges are false, the opposing has every opportunity of proving that fact: The parties both being in open court are both subject to the orders of the court,—a very different situation from an *ex parte* hearing in the absence of the party most directly concerned and without her knowledge.

We have read with care the two Massachusetts cases relied upon by Judge Peck as supporting the decision in the case of *Parish* v. *Parish*, *supra*. Both rely on this same principle of public policy. Perhaps neither of those cases could be, strictly speaking, regarded as parallel to the case at bar; but the principles at issue were in each of them discussed.

The case of *Lucas* v. *Lucas*, 69 Mass. (3 Gray) 136, was an attempt,

Mercer County.

·by a defeated plaintiff, to 1eopen a divorce case, and to obtain a divorce denied him at the former trial in which his petition was dismissed. The case was considered principally upon the technical question as to whether a divorce suit is a civil action or a judicial proceeding and whether as a consequence, a writ of review should be granted. But the opinion is based finally on the question of public policy.

· The case of *Greene* v. *Greene,* 68 Mass. (2 Gray) 361 [61 Am. Dec. 454], was an action by a wife asking a divorce on the ground of desertion, but alleging that the husband had previously (and as she avers, falsely· and fraudulently) obtained a divorce against her on the ground of adultery; and, as a basis for her suit, she asks that this former decree be set aside.

The opinion in that case is expressly stated to be based on the doctrine of *res judicata* as settled in that case and as applied to the case of divorce. This will not help us in this case at bar, for our statute expressly opens up all cases for reconsideration within five years in contradiction of the. doctrine of *res judicata,* unless under the rule in *Parish* v. *Parish, supra,* a bar is established on other grounds.

But in the opinion in *Greene* v. *Greene, supra,* the court, after basing its decision on the doctrine of *res judicata* turns to a discussion of public policy as controlling the case and considers only the consequences that would follow a retrial without any consideration of what might follow a refusal of a retrial in a proper case. Neither of these Massachusetts cases therefore is helpful in the case at bar, except for the support which they give to the doctrine that public policy demands, in divorce cases, the adherence to a decree once rendered because of the evil consequences which are likely to follow the opening of such decree as affecting the rights of third parties.

When these cases and *Parish* v. *Parish* were decided, this question ⸰ was comparatively a. new one; but since that time the courts of almost every state in the Union have been called upon to consider it.

In some states the legislature has passed laws governing the situation of the parties, as, for instance, Missouri, which by statute has provided that "no petition for review of any judgment for divorce rendered in any case   *   *   *   shall be allowed, any law or statute to the contrary notwithstanding." And the courts of that state hold that this statute bars the same court in the same proceeding or even courts of equity from setting aside a divorce decree in a new proceeding, where the record shows the necessary jurisdictional facts which are found by the court to exist. *Hansford* v. *Hansford,* 34 Mo. App. 262; *Salisbury*

Mulligan v. Mulligan.

v. *Salisbury*, 92 Mo. 683 [4 S. W. Rep. 717]. The latter case cites with approval *Parish* v. *Parish* and *Greene* v. *Greene, supra.*

In Kansas the statute allows six months after the rendition of the divorce decree. In that state and within that period a defendant in divorce proceedings served by publication may bring suit to vacate the decree. *Hemphill* v. *Hemphill,* 38 Kan. 220. [16 Pac. Rep. 457]. And if the action is commenced within two years after the discovery of fraud in obtaining the divorce, the decree may be vacated upon a proper showing. *Larimer* v. *Knoyle,* 43 Kan. 338 [23 Pac. Rep. 487].

In Illinois a decree of divorce against one notified by publication only and who does not appear is not absolute until three years after it is entered, but conditional and subject to be set aside, even though the complainant may have married before it is set aside. *Lawrence* v. *Lawrence,* 73 Ill. 577. Also *Whittaker* v. *Whittaker,* 151 Ill. 266 [37 N. E. Rep. 1017].

And so, many other states have enacted similar statutes designed to meet the difficulties of such cases and to protect innocent parties from decrees of divorce obtained by fraud.

In Kentucky under a statute similar to the Ohio statute, when a husband has obtained a divorce on constructive service the wife is entitled to appear in court within five years and move for a rehearing. *Meyar* v. *Meyar,* 60 Ky. (3 Metc.) 298.

In Nebraska a similar statute was formerly (1880) held not to apply to a divorce case. See the case of *O'Connell* v. *O'Connell,* 10 Neb. 390 [6 N. W. Rep. 467], but in a later case, decided in 1893, it was held that the court which had formerly allowed the decree (fraudulently obtained) could, in the exercise of its general equity powers, vacate it on proper showing of fraud and imposition, though the petition was not filed until eleven years after the decree. *Smithson* v. *Smithson,* 37 Neb. 535 [56 N. W. Rep. 300; 40 Am. St. Rep. 504].

In the case of *Wisdom* v. *Wisdom,* 24 Neb. 551 [39 N. W. Rep. 594; 8 Am. St. Rep. 215], it was held that courts of general jurisdiction have power to set aside or vacate decrees of divorce, after the term at which the decree was rendered, when obtained by fraud.

In Indiana, while the earlier decisions denied the right to a retrial of a divorce suit even within the statutory time allowed in other cases, see *Ewing* v. *Ewing,* 24 Ind. 468, yet it was held in 1883 that a decree of divorce obtained by fraud will be vacated in a direct proceeding

if plaintiff has acted promptly after discovering the fraud. *Earle* v. *Earle*, 91 Ind. 27.

In New York the courts have gone a great way in granting protection to a party defrauded in a divorce proceeding. In the case of *Miller* v. *Miller*, 37 How. Pr. 1, a defendant was allowed to come in, two years after the decree and file her motion to set aside the decree. See also, *Weidner* v. *Weidner*, 85 Hun 432 [32 N. Y. Supp. 894]; *Van Rhade* v. *Van Rhade*, 9 N. Y. S. C. (2 Thompson & Cook 491); *Singer* v. *Singer*, 41 Barb. (N. Y.) 139; *Jewitt* v. *Jewitt*, 2 N. Y. Supp. 250; *Robertson* v. *Robertson*, 9 Daly (N. Y.) 44.

In Pennsylvania it was held in the case of *Fidelity Insurance Co's. Appeal*, 93 Pa. St. 242, that, "upon sufficient cause shown, decree of divorce may be vacated although the libellant is dead and more than twelve years have elapsed since the decree was made."

And so, in many of the states, the courts, independently of statute, have passed upon this question.

In Minnesota, a decree of divorce obtained by the fraud of the husband, was set aside in a suit commenced one year and seven months after the decree of divorce. *Young* v. *Young*, 17 Minn. 181; *Colby* v. *Colby*, 64 Minn. 549 [67 N. W. Rep. 663].

In Illinois a divorce obtained by fraud of which the proof was clear, was set aside on a bill of review brought after the lapse of fourteen years; and the fact that defendant had married again and had children was held of no consequence. The court then held that, notwithstanding a statute providing that the defendant in a decree rendered on constructive notice may, on petition within three years thereafter, appear and answer, and that such decree if not set aside within that time shall be "deemed confirmed," this does not bar a defendant in a divorce decree, fraudulently obtained on publication, from filing a bill to impeach it after the expiration of three years. *Caswell* v. *Caswell*, 11 N. E. Rep. 342 [120 Ill. 377]. And in that case the court say, on page 347,

"The fact of appellee's remarriage, of there being children thereof, —although we do not see in the record proofs of such children,—and of the hardship which will result to innocent persons from setting aside the decree of divorce, are dwelt upon as objections to the granting of such relief. Such ill consequences we can appreciate and must regret, but yet they do not form reason sufficient for a denial of the exercise of the court's power to vacate such a decree, obtained by fraud, as has often been determined." Citing, *Crouch* v. *Crouch*, 30 Wis. 667; *Rush* v. *Rush*, 46 Ia. 648 [26 Am. Rep. 179]; *Whitcomb* v. *Whitcomb*, 46 Ia.

Mulligan v. Mulligan.

437; *Edson* v. *Edson*, 108 Mass. 590 [11 Am. Rep. 393]; Bishop, Mar. & Div. Secs. 751-753a and other authorities.

While the courts of Missouri, in obedience to a mandatory statute, follow the Ohio rule of *Parish* v. *Parish, supra,* and the supposed precedent of the Massachusetts cases of *Green* v. *Green* and *Lucas* v. *Lucas, supra,* we have found no case in any other state where, upon facts similar to those in the case at bar, relief has not been granted upon proof of due diligence on the part of the party complaining of the fraud.

But even in Massachusetts the supposed precedents of *Greene* v. *Greene* and *Lucas* v. *Lucas* have been completely departed from or explained away.

In the case of *Carley* v. *Carley*, 73 Mass. (7 Gray) 545, it was held that, "A decree of divorce, obtained by fraud, and without the libelee's knowledge, may be set aside on the application of the libelee *at the same term.*"

But in a later case, the case of *Edson* v. *Edson, supra,* this whole subject was reviewed and the court held as follows:

"This court has power, upon the petition of the party aggrieved, to vacate a decree of divorce obtained at a former term against the petitioner by false testimony, on a libel of which she had no actual notice, knowledge of which was fraudulently kept from her by the other party, and of which the court had only an apparent jurisdiction, founded on his false allegations of domicile."

The facts in that case were in all essentials identical with those in the case at bar, and Bigelow, C. J., in his opinion says:

"The question to be determined is, whether a judgment so obtained can be re-examined and set aside by the party aggrieved by the fraud, or whether it is to be taken as forever binding and conclusive on the rights and obligations of the parties.

"The statement of the question is of itself sufficient to make it apparent that, if there is no remedy by which judgments so procured to be rendered can be impeached and annulled, courts of justice may be made instruments by which the grossest frauds may be successfully accomplished, to the great wrong and injury of innocent persons. Such a conclusion cannot be supported, unless it is founded on adjudicated cases which the court is bound to regard as obligatory declarations of the law, or upon reasons of the most decisive and satisfactory nature.

"Upon careful examination of the authorities we are entirely satisfied that they do not sustain the doctrine, that courts have no power to grant relief to parties to a suit, against whom a judgment has been

obtained by fraud. It is no doubt true, that a decree or juagment which stands unreversed and in force cannot be called in question or impeached in collateral proceedings, by one of the parties to the original suit; it is a very different proposition to maintain that an innocent party cannot invoke the power of the court by which the original judgment or decree was rendered, to vacate and annul it on the ground that it was procured by a fraud practiced on the court to his gross injury. We believe it to be an established principle of jurisprudence, that courts of justice have power, on due proceedings had, to set aside or vacate their judgments and decrees, whenever it appears that an inno-cent party without notice has been aggrieved by a judgment or decree obtained against him without his knowledge, by the fraud of the other party. * * *

"The case of *Greene* v. *Greene,* [68 Mass.] 2 Gray 361, which is cited and relied upon by the respondent, is not in conflict with the general current of authorities. Some of the general expressions used by the court, when disconnected from the facts of the case then in ad-judication, have been thought to give sanction to the doctrine that a decree of divorce, when once obtained, could not be impeached in any form or mode of proceeding, or set aside by one of the parties to the original suit, however fraudulent and conclusive may have been the conduct of the other party in its procurement. But such a conclusion is not a fair and legitimate result of the language and rea-soning of the court, when considered, as it ought to be, solely with reference to the actual case before the court for adjudication."

Justice Bigelow then proceeds to distinguish the case of *Greene* v. *Greene, supra,* from the case then before the court and concludes that it is not an authority for the proposition then before the court; and he thus concludes in words clearly applicable to the case now before this court,

"Nor does the petitioner seek to set aside a decree rendered against her in a suit of which the court had full jurisdiction, of the pendency of which she had due notice, and in which an opportunity to be heard was afforded her; but she asks only that she may not be deprived of her rights by a judgment rendered against her in a proceeding of which she not only had no notice, but of which all knowledge was fraudulently kept from her, and of which the court had no actual jurisdiction, but only an apparent jurisdiction, founded on a false allegation of domicile.

"It is hardly necessary to add," he says, "that reasons of public policy, or a regard to the consequences which might ensue to innocent

Mulligan v. Mulligan.

parties from the exercise of a power to invalidate a decree of divorce after it had become *res adjudicata,* do not constitute sufficient reasons for a denial of the existence of the power. Considerations of such a nature may well induce courts of justice to exercise the power with great caution, and only where the rights of parties are clear and there has been no neglect or failure to insist upon them in due season. Further than this, they can have no weight."

Thus it appears that Massachusetts, like all other states of whose adjudications on this question we have knowledge, excepting only Ohio and Missouri, distinctly declares the powers of courts to open up a divorce decree at a subsequent term, on proof of fraud.

And so the courts of California hold to the same effect. See *McBlain* v. *McBlain,* 77 Cal. 507 [20 Pac. Rep. 61], and of Colorado, see *Morton* v. *Morton,* 16 Col. 358 [27 Pac. Rep. 718], and of Iowa, see *Rush* v. *Rush,* 46 Ia. 648 [26 Am. Rep. 179], and of Louisiana, see *Bryant* v. *Austin,* 36 La. Ann. 808, and of Pennsylvania, see *Smith* v. *Smith,* 3 Phila. 489, and *Wanamaker* v. *Wanamaker,* 10 Phila. 466 [30 Leg. Int. 265], and of Wisconsin, see *Everett* v. *Everett,* 60 Wis. 200 [18 N. W. Rep. 637], and of Montana, see *Simpkins* v. *Simpkins,* 14 Mont. 386 [36 Pac. Rep. 759; 43 Am. St. Rep. 641], and of North Dakota, see *Yorke* v. *Yorke,* 3 N. D. 343 [55 N. W. Rep. 1095].

The last case contains a very emphatic statement of the law:

"Courts of general jurisdiction have the inherent power, independent of any statutory provisions, and in divorce cases no less than in other cases, to set aside and annul any judgment or decree procured by the fraud and deceit of the successful party, practiced upon the complaining party to the action, and the court."

Cases might be multiplied from many of the other states. All holding that fraud in obtaining a decree of divorce, like fraud in any other proceeding vitiates it, and that it can be relieved in a divorce proceeding as in any other proceeding, even after the term at which the decree was taken.

Nor does the remarriage of a plaintiff who has obtained his divorce decree by fraud protect him from the consequences of his fraud. It is so held in Montana in the case of *Simpkins* v. *Simpkins, supra,* and in Colorado, see *Medina* v. *Medina,* 22 Col. 146 [43 Pac. Rep. 1001], and in New York, *Wortman* v. *Wortman,* 17 Abb. Prac. (N. Y.) 66, and in Texas, *Stephens* v. *Stephens,* 62 Tex. 337, and in Illinois, *Caswell* v. *Caswell,* 120 Ill. 377 [11 N. E. Rep. 342], and in Iowa, *Whitcomb* v. *Whitcomb, supra.*

Nor where rights of third parties have intervened. *Rush* v. *Rush,*

Mercer County.

46 Ia. 648, and in Wisconsin, *Crouch* v. *Crouch*, 30 Wis. 667, and in Minnesota, *Bomsta* v. *Johnson*, 38 Minn. 230 [36 N. W. Rep. 341].

Nor under the holdings in several states will even the death of the former plaintiff be a bar to vacating a decree of divorce obtained by false representations in obtaining service by publication when personal service could have been obtained. See *Johnson* v. *Coleman*, 23 Wis. 452 [99 Am. Dec. 193]; *Fidelity Insurance Co's. Appeal*, 93 Pa. St. 242; *Bomsta* v. *Johnson*, 38 Minn. 230 [36 N. W. Rep. 341].

From all of these cases it appears that the view that public policy demands the upholding of all decrees of divorce, no matter how fraudulently obtained, is now practically abandoned by courts generally.

In fact with the single exception of Missouri, where a statute specifically protects such decrees from modification at subsequnt terms of court,—we have found no state in the union outside of Ohio where such a view is now held as an absolute proposition. There may, of course, be others and probably there are, but we have not been able to find them.

The difficulty, as we have said, is great. No rule can be adopted which may not cause great injustice in some of its applications.

Public policy might equally well be invoked in support of either side of the question. But what is more serious in our view than any question of public policy is this: that to upset a rule which has been observed in this state for more than half a century can only be justified after the greatest consideration of the dangers involved.

But no rule which protects and encourages perjury, and fraud, and misrepresentations, can, it seems to us, safely be permitted to perpetually impede justice. Courts have inherently the right to protect themselves and the public from fraud and perjury.

That "fraud vitiates everything" is a maxim which has grown to be of almost universal application,—and justly so. To arbitrarily, or in deference to a view of public policy which takes no account of other demands of public policy equally weighty, hold that a rule applicable to all other classes of cases, and made so applicable by statute, can have no application to divorce cases, seems only justifiable under most extraordinary conditions.

There are, as we have found, reasons which seem to us as weighty and more so, why the ordinary rule should apply.

This view we have based upon an attempted consideration of the principles which should govern the case and a review of all the accessible decisions of other states leads us to the conclusion that there is now a practical unanimity among the courts of all the states in holding that

Mulligan v. Mulligan.

in divorce cases as in all other cases, a decree obtained by fraud and perjury may, on the facts being shown, be set aside even after the term at which the divorce decree was rendered.

For these reasons the judgment of the court of common pleas will be reversed, the demurrer to the amended petition overruled and the cause remanded to that court for further proceedings in accordance with law.

**Norris** and **Donnelly, JJ.,** concur.