SIMPKINS, RESPONDENT, *v.* SIMPKINS, APPELLANT.

[Submitted November 24, 1893.   Decided May 7, 1894.]

JUDGMENT BY DEFAULT—*Divorce—Motion to vacate.*—Refusal to vacate a default judgment in a divorce case upon motion is an abuse of discretion where it appeared that defendant, who was a nonresident, immediately upon receiving the summons employed counsel where she lived, who at once wrote to a local attorney inquiring whether he would appear for defendant; that the latter appeared in the case, but, after securing plaintiff's acceptance of a compromise as to alimony which he understood he was authorized to offer on behalf of defendant wrote that he would withdraw from the case unless such compromise was accepted by defendant; that defendant refused such proposed compromise by telegraph, and followed the same with letters explaining such refusal, but which were returned unopened; that upon receipt of such message *he declined to file defendant's answer* which he had in his possession, and which disclosed a meritorious defense; and, refusing to take further action suffered the case to go by default. Nor would the merits of the motion be affected by the fact that the plaintiff had remarried immediately after such judgment; the condition of the parties to such marriage not being of defendant's creation.

*Appeal from Third Judicial District, Deer Lodge County.*

ACTION for divorce.   Defendant's motion to vacate the judgment was denied by DURFEE, J.   Reversed.

Statement of the case by the court.

This is an action for divorce, commenced by filing complaint March 23, 1892, in the third judicial district court in and for Deer Lodge county, the plaintiff alleging that he was a resident of that county.   It appears that defendant was at the city of La Crosse, Wisconsin, at the time of the commencement of the action.   The service of summons was by publication, and by mailing a copy thereof to defendant at La Crosse.   Demurrer was filed April 22d, by H. R. Whitehill, attorney for defendant.   The demurrer was heard and overruled August 13th. No further pleading being filed by defendant, on August 14th her default was entered for failure to answer, and proof was heard upon the part of plaintiff, and judgment dissolving the bonds of matrimony between plaintiff and defendant was made and entered.   On September 22d a motion was made by defendant to set aside the judgment, open the default, and allow her to defend the action.   On that motion an answer was tendered, which apparently pleaded a good defense to the

cause of action set up in the complaint. Her motion was by the court denied. From this order she appeals.

It will be necessary to state somewhat fully the facts upon which the motion was based. The defendant filed her own affidavit, setting forth what she claims was her diligence in attempting to defend the case, and she annexed to said affidavit the correspondence between her attorney, W. S. Burroughs, in La Crosse, Wisconsin, and H. R. Whitehill, in Deer Lodge, Montana. Her affidavit was not contradicted except in one matter, which is noticed in the opinion below. From this affidavit, and the letters annexed, the following facts appear: Immediately upon receipt by her, through the mail, of a copy of the summons, she went to W. S. Burroughs, an attorney in La Crosse, Wisconsin, and employed him as her counsel. It appears that she was cognizant of the whole correspondence which afterwards took place between Mr. Burroughs and Mr. Whitehill. Mr. Burroughs at once (on April 19th) wrote to Mr. Whitehill (having obtained his name from the legal directory), and stated the fact of the commencement of the action, and inquired whether Mr. Whitehill would appear in the case for defendant as local attorney. In this letter he informed his correspondent of the condition of defendant and the number of her children, and something of her circumstances and marital history.

To this letter Mr. Whitehill sent the following answer:

"Deer Lodge, Montana, April 21st, 1892.

" *Wm. S. Burroughs, Esq.*, .

"Dear Sir: Your letter of the 19th inst. is just received. I will look up the complaint in *Simpkins* v. *Simpkins,* and put in an appearance for Mrs. Simpkins so as to prevent a default being taken against her. In case of a contest in the matter I shall charge $250.00. A portion of that, however, can be collected from the husband. In case we can make a settlement and procure an allowance for Mrs. S.'s support without trial I shall charge $100.00. If Simpkins is so very determined to have the divorce it is very likely that Mr. Titus will make some offer here when he finds an appearance has been made. In the mean time you might notify me of the facts as to the desertion, which you say is the ground

alleged for divorce, and also what amount Mrs. Simpkins would accept as alimony. Yours very truly,

"H. R. WHITEHILL."

(Mr. Titus was plaintiff's attorney.)

In accordance with this letter of April 21st, Mr. Whitehill on the next day filed a general demurrer on the part of defendant. To this letter Mr. Burroughs, on May 2d, replied substantially as follows: That his client would not be able to pay the amount charged by Mr. Whitehill. He then asks whether he cannot go on with the case, and gets his fee by virtue of an order of the court for counsel fees against the plaintiff. He discusses the procedure for obtaining such order quite at length. Then he sets forth the facts of defendant's defense.

The cause of action set up in the complaint is desertion solely.

In this letter Mr. Burroughs set out fully the facts which he claims showed that there was no desertion. He states that such facts can be proved, and says that depositions will be taken at La Crosse to prove the same. He thus furnishes the Deer Lodge counsel the material for preparing an answer. As to what the defendant would be willing to accept as alimony, her La Crosse counsel, in this letter, says: I think as she now looks at the matter, if he would pay you, and send to her $1,000.00, she would let him go. Have the kindness to write me that you have appeared and prevented default."

In reply to this letter of Mr. Burroughs, Mr. Whitehill, on May 26th, writes, and, after apologizing for some delay, says: "The case stands on a general demurrer, which Mr. Titus does not seem anxious to get rid of, so there has been no hurry. I shall look out for the case, and see that no advantage is taken of Mrs. Simpkins, and in the course of a couple of weeks, when this term of court adjourns, will prepare the answer necessary, and send you for Mrs. Simpkins to verify."

Pursuant to this letter, on July 7th, Mr. Whitehill sends the following:

" Wm. S. Burroughs, Esq.,

"DEAR SIR: Inclosed I send you answer in Simpkins v. Simpkins for verification before a notary public. Our next term of court begins on the 18th inst. Please return the

answer at once. At the time of filing I will have citation issued for Simpkins to show cause, if any, why alimony *pendente lite* should not be allowed, and have an order made for expenses and attorney's fees.

"Yours truly,

"H. R. WHITEHILL."

Upon receipt of this answer Mr. Burroughs had it verified at once, and on July 11th forwarded it to Mr. Whitehill. On July 9th Mr. Whitehill advised Mr. Burroughs of some negotiation of compromise as to alimony, talked of between him and Simpkins' attorney. To this letter Mr. Burroughs replies that his client cannot accept a $1,000 alimony; that she has no means of her own, and has two minor children, one 17 and one 19 years of age. He says that the defendant wishes to resist the divorce, but, if it is to be granted, she cannot get along upon $1,000, and makes the following proposition, which she, through Burroughs, in this letter, authorizes Mr. Whitehill to make, namely, that she will accept $2,000 for herself and the payment of Mr. Whitehill's fees, or the plaintiff may pay her $1,000, and secure her in some way the payment of $25 a month towards the support of her daughter, who is 17 years old, until she shall became of age, which in Wisconsin is 21 years.

To this letter Mr. Whitehill replies, on July 24th, as follows:

"DEER LODGE, MONTANA, July 24th, 1892.

"*Wm. S. Burroughs, Esq.,*

"DEAR SIR: I am surprised at your letter of the 16th inst. stating that Mrs. Simpkins now demands $2,000. Some time ago Mr. Titus came to me and offered $500 and $25 per month alimony during the minority of the youngest child. (Full age for females here is 18 years.) I told him that I could not settle on such terms, but that, if he would pay Mrs. Simpkins $1,000 cash, and my fee, I would allow him to enter judgment. I gave him time, at his request, to see Simpkins. He came back in a few days after; and said that Simpkins could only raise $500; that he would pay her that amount only, and no alimony, but would pay my fee. I told him again no, but that, if he would pay Mrs. S. $1,000, I would reduce my fee to $100, making $1,100, and costs of

court. At that time Mrs. Simpkins' answer had not been re-
turned, so I told Mr. Titus that, unless my proposition was
accepted by the 23d instant, I would file the answer, and cite
Simpkins to appear and answer why an order of court should
not be made compelling him to pay attorney's fee and alimony
*pendente lite.* He agreed to see Simpkins again, but said: 'I
know Simpkins has not got that much money, but he may be
able to borrow it.' Yesterday Mr. Titus came again, and said
Simpkins had arranged to borrow $500, but I told him Mrs.
Simpkins now wants $2,000. Now, I was authorized by your
letter of May 2d to settle with Simpkins for $1,000 cash and
my fee. I am satisfied that he has no money or property that
we can reach at all, and that, in case of a contest, Mrs. Simp-
kins can get nothing at all. Even were we to get a decree
for alimony none can be collected. Simpkins would simply
resign his position as conductor, and go off to some other state.
But I do not propose to bother with Mrs. Simpkins' case any
further. If she wishes to take $1,000, and let Simpkins take
a divorce, she can get it. If not, I shall withdraw from the
case, and you may arrange at once for some other attorney to
appear for her here. I shall not file the answer at all. Simp-
kins will simply dismiss his case here, refuse to pay her any
thing, and make application in some other court, where she
can get no notice of the proceedings, and he will get his divorce
without paying her one cent. Answer at once by telegraph
whether this offer is accepted or not.

" Yours truly,
" H. R. WHITEHILL."

Burroughs then, on July 28th, telegraphs as follows:

" *To H. R. Whitehill, Attorney, Deer Lodge, Montana:* No;
Mrs. Simpkins will not accept. File answer and application
for alimony, as promised in your last letter. I will write
to-night.                               WM. S. BURROUGHS."

Upon receipt of this telegram Mr. Whitehill declined to file
the answer which had been prepared by him, and refused to
have anything further to do with the case, and so informed
plaintiff's attorney.

On July 28th, the day of sending the above telegram, and
also on August 17th and August 29th, Mr. Burroughs wrote

to Mr. Whitehill at his regular Deer Lodge address, and these three letters came back to Burroughs, indorsed "Return to writer." In these three letters Burroughs urged Whitehill to go on with the case, and begs him at least to file the answer. During the time that these three letters were being written and forwarded and returned unopened to the writer the judgment was entered, of which defendant had no knowledge. On the 6th of August the demurrer was set for hearing for the 13th. On that day the demurrer was overruled, and defendant given twenty-four hours to answer. She was then in Wisconsin, and was unrepresented by counsel in Deer Lodge. At the expiration of this twenty-four hours her default was entered, and on the following day the judgment was entered. On the same day —the 15th of August—the plaintiff married another woman. Upon this showing the district court declined to set aside the judgment and open the default. The question before us is whether the court abused a sound discretion in denying this application.

*Brazelton & Scharnikow,* for Appellant.

The provisions of section 116 of the Code of Civil Procedure, upon which this motion is based are liberal in their terms, remedial in their character, and are designed to afford parties a simple, speedy, and efficient remedy in a most worthy class of cases. The power conferred thereby should be exercised by courts in the same liberal spirit in which they are designed, in furtherance of justice, so that cases may be tried on their merits. The exercise of the mere discretion of the court ought to tend, in a reasonable degree at least, to bring about a judgment upon the very merits of the case; and when the circumstances are such as to lead the court to hesitate upon the motion it is better, as a general rule, that the doubt should be resolved in favor of the application. (*Watson* v. *San Francisco etc. R. R. Co.,* 41 Cal. 20; *Cameron* v. *Carroll,* 67 Cal. 500; *Dougherty* v. *Nevada Bank,* 68 Cal. 275.) When a party applies promptly for relief after he has notice of the judgment, and has not been guilty of gross laches, and his affidavits and answer present a meritorious defense, the court should not hesitate to set aside a default and allow him to file his answer.

(*Buell* v. *Emerich*, 85 Cal. 116; *Reidy* v. *Scott*, 53 Cal. 69. *Haggerty* v. *Walker*, 21 Neb. 596; *Griswold Linseed Oil Co.* v. *Lee*, 1 S. Dak. 531; 36 Am. St. Rep. 761; *Taylor* v. *Trumbull*, 32 Neb. 508; *Malone* v. *Big Plant Mining Co.*, 93 Cal. 384.)

*Rogers & Rogers,* for Respondent.

The decree was fairly obtained; there is no pretense that plaintiff perpetrated a fraud upon defendant or in any manner imposed upon the court.  In such cases the decree of divorce will not be set aside and the defendant allowed to answer to the merits of the action.  (2 Bishop on Marriage, Divorce, and Separation, §§ 1533–35; *Davis* v. *Davis*, 30 Ill. 180–84; *Lewis* v. *Lewis*, 15 Kan. 181; *Rouse* v. *Rouse*, 47 Iowa, 422; *Whiting* v. *Whiting*, 114 Mass. 494; *Brown* v. *Brown*, 59 Ill. 315; *Holbrook* v. *Holbrook*, 114 Mass. 568; *Greene* v. *Greene*, 2 Gray, 361; *Lucas* v. *Lucas*, 3 Gray, 136.)  The negligence of counsel is not cause for vacating a judgment.  (*Haight* v. *Green*, 19 Cal. 118; *Mulholland* v. *Heyneman*, 19 Cal. 605; *Ekel* v. *Swift*, 47 Cal. 620; *Smith* v. *Tunstead*, 56 Cal. 175.)

Per CURIAM.—The motion of defendant in this case to open the default was upon the ground of alleged excusable neglect on her part.  The Code of Civil Procedure provides that "the court may . . . . relieve a party, or his legal representatives, from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."  (§ 116.)

Defendant contends upon her motion that, if there were any neglect on her part in allowing default and judgment to go against her, it was excusable.  It is perfectly evident from all the facts shown by defendant's affidavit, and by the correspondence between her counsel in La Crosse and Deer Lodge, that she was anxious to defend this action.  There is nothing whatever looking to any intention to neglect it or allow it to go by default.  Her attitude was that of vigilance from her very first knowledge of the commencement of the action up to the time when she learned that the judgment had been rendered.  At that time she came at once from Wisconsin to Deer Lodge, a distance of one thousand two hundred miles, and

promptly commenced proceedings for the purpose of setting aside the judgment and obtaining leave to defend the action. She had at once, upon receiving the summons by mail, consulted an attorney at her home in Wisconsin, and through him had secured the services of an attorney at Deer Lodge. She was cognizant of the letters written by Mr. Burroughs to Mr. Whitehill. From them it clearly appears that she was extremely vigilant and attentive to every step in the case. When finally the judgment was rendered against her she had at that time a verified answer in the hands of her Deer Lodge attorney, setting up a complete and meritorious defense.

Wherein was defendant's negligence? It was sought to be argued that it was in not at once employing other counsel upon the receipt by her of Mr. Whitehill's letter of July 24th, in which he said that unless she accepted certain terms of compromise, which he set forth, he would have nothing more to do with the case. It appears by Mr. Titus' affidavit, in contradiction of defendant, that at this time the defendant and her La Crosse attorney knew the names of Deer Lodge attorneys other than Mr. Whitehill. It is claimed by plaintiff that it was negligence in defendant, in that upon the receipt of this letter she did not at once employ some one else. But it must be remembered that Mr. Whitehill then had charge of her case, and that he had in his possession the verified answer which she had sent to him to file. Furthermore, Mr. Whitehill never informed defendant that he had withdrawn from the case. He had simply told her that he would do so if she did not accept those certain terms, which she claims she had never authorized him to offer to plaintiff. The most that appears is that Mr. Burroughs had said at one time that he thought those terms might be accepted. Burroughs telegraphed for Mrs. Simpkins, to Whitehill, that she did not accept the terms, and requesting Whitehill to file the answer and go on with the defense. Then it was that Burroughs wrote fully, setting forth, by reference to the correspondence, that defendant had not authorized the offer which Whitehill thought he had power to make. This was July 28th. This letter Mr. Whitehill never opened. Nor did he open the two others which followed it; but, on the other hand, he returned them unopened to the

writer.   We are of opinion that the defendant and her La
Crosse representative had reason to expect at least that these
letters would be opened and read by Mr. Whitehill.   They
explained fully that the offer which Mr. Whitehill claimed
that he was authorized to make to plaintiff's attorney had not
been so authorized.   The defendant had the right to believe
that when Mr. Whitehill received these letters he would read
them, and that, having read them, their contents would lead
him to file her answer, or place her in some position to secure
other counsel, or at least notify her of his withdrawal from the
case.

No question was raised as to Mr. Whitehill's fees, and, the
defendant having the right to believe that her Deer Lodge
counsel would read the letters following July 28th, there was
no reason apparent to her why he would leave her in default.
If Mr. Whitehill had read the unopened letters he would
have read therein the defendant's statements that he (White-
hill) was mistaken when he considered that he was authorized
to make the offer to plaintiff's attorney which he mentions
in his letter of July 28th, and the nonconcurrence in which
proposition by defendant was the cause of Whitehill's threat-
ened withdrawal.   Then Mr. Whitehill, or any other fair
attorney, if he still persisted in withdrawing from the case,
would have notified defendant, and put her in a position not
to suffer a default by his withdrawal.   That is to say, this is
what defendant, sitting in her home at La Crosse, one thou-
sand two hundred miles from the court, had reason to believe;
and, so having reason to believe, she was not negligent in act-
ing as if she so believed.

We can see no negligence whatever of defendant which was
not absolutely excusable; and indeed it is difficult to find any
negligence on her part at all.

Under all these facts of the case we are of opinion that it
would be a reproach upon the administration of the law to
allow this judgment to stand.   Divorce laws and procedure in
some jurisdictions are often a subject of adverse criticism.   If
such a proceeding as the one before us is allowed to pass with
approval or unchallenged such criticism would be wholly
just.

It is urged that the merits of the motion are affected by the fact that plaintiff has remarried since the rendering of the divorce judgment. Yes, plaintiff has remarried, according to the record, and he did this before the ink was dry upon the judgment divorcing him by default from the woman who had been his wife for twenty-five years, who had borne his children and reared them to near their majority, and who had kept the home and hearth for him and his children during all these years. And this judgment, obtained without a hearing on the part of defendant, was upon a complaint not charging cruelty or adultery, or any of the graver offenses against the marriage contract, but upon a complaint alleging desertion only, and a desertion after twenty-five years of married life— a charge by plaintiff, upon the truth of which all the circumstances of this case throw the gravest suspicion. In this connection it is appropriate to notice the verified answer which was tendered with the motion. That answer not only denies the allegation of desertion, but it emphatically denies that plaintiff is a resident of the state of Montana, and it sets up facts which, if true, show that he is a resident of the city of La Crosse, Wisconsin. It alleges that the plaintiff was a railroad conductor, and that he was employed in different places, and that, after having had many homes at divers times, they finally settled in this home in La Crosse; that plaintiff always treated it as such, and that he spoke of it as such in the letters which he wrote to defendant and his children; that he wrote to them in affectionate terms, and visited them up to a short time before commencing this suit, and up to that time sent them money and presents; and that never did he intimate his claim of defendant's alleged desertion, or of his intention to claim a residence in Montana. Now, under all these circumstances, for plaintiff to claim that his remarriage, in this hot and indecent haste, is pertinent upon this motion is a sorry sort of a reply to the motion of defendant setting up the pitiable facts disclosed by this record. Nor is the situation of the person whom plaintiff purported to marry on August 15th a consideration that can set aside the rights of this defendant. Such condition is not of defendant's creation or her fault.

The order denying the motion to open the default is reversed, and the case is remanded, with directions to the district court to grant the application, and to set aside the judgment, and allow defendant to file her answer and make defense.

*Reversed.*

All concur.