McCONKEY v. McCONKEY.  (No. 8360.) *

(Court of Civil Appeals of Texas. Ft. Worth. May 27, 1916. Rehearing Denied June 24, 1916.)

1. DIVORCE ⟨key⟩165(3) — VACATING DECREE — GROUNDS—IRREGULARITY.

Where a husband's action for divorce on the ground of the wife's abandonment, which the district court was expressly empowered to try by Rev. St. 1911, arts. 4630, 4631, was tried by a judge specially appointed during the illness of the regular judge, out of its regular order, in a room other than that designated for the trial of causes, and without notice to defendant or her counsel, a decree rendered for the husband, while not a nullity, was affected by such irregularities as to authorize its vacation.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 535–538; Dec. Dig. ⟨key⟩165(3).]

2. DIVORCE ⟨key⟩167 — DECREE — SUIT TO SET ASIDE—QUESTION FOR JURY.

In a wife's suit to set aside a decree of divorce for fraud in the trial of such action, which, through no want of diligence, was not discovered during the term of the court at which the decree was rendered, and alleging that she had a meritorious defense to the action, where such matters were made issuable both by the defendant's pleadings and the evidence, the court was not authorized to take the case from the jury, direct a verdict, or enter up a judgment for plaintiff.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 533–548; Dec. Dig. ⟨key⟩167.]

3. APPEAL AND ERROR ⟨key⟩1170(3)—REVERSAL —IMPROPER JUDGMENT—RULE OF COURT.

Plaintiff's allegations being in the main relevant to the necessary elements of her suit, any unnecessary averments or averments in the nature of mere evidentiary facts did not require a reversal of the judgment for her, in view of rule 62a for Courts of Civil Appeals (149 S. W. x), providing that no judgment shall be reversed on the ground of error of law in the trial unless the appellate court is of opinion that the error amounted to a denial of the rights of the appellant calculated to cause the rendition of an improper judgment or to prevent a proper presentation of the case to the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4066, 4075, 4098, 4101, 4542; Dec. Dig. ⟨key⟩1170(3).]

4. DIVORCE ⟨key⟩167—VACATION OF DECREE— AGREEMENTS OF COUNSEL—KNOWLEDGE OF CLIENT.

In a suit, to set aside a decree of divorce alleged to have been entered in violation of an agreement, the fact that defendant himself was not made to appear cognizant of the agreements of his counsel and of the want of notice to plaintiff's counsel was not a defense.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 533–548; Dec. Dig. ⟨key⟩167.]

5. DIVORCE ⟨key⟩167—VACATION OF DECREE— ORAL AGREEMENTS OF COUNSEL — VIOLATION.

Though an oral agreement of counsel in a divorce action that the jury fee might be paid at any time before trial was not enforceable, its violation might be considered as a circumstance of fraud in an action to vacate the decree.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 533–548; Dec. Dig. ⟨key⟩167.]

6. DIVORCE ⟨key⟩167—ACTION TO SET ASIDE DECREE — SPECIAL ALLEGATIONS — PREJUDICE.

In a wife's suit to set aside a decree of divorce obtained by the husband on the ground of her abandonment, specific allegations in the petition in reply to the husband's averments in his petition for divorce that she had left with intent to abandon him, notwithstanding his kind treatment and provision for her, that at the beginning of such alleged abandonment she had at his request gone to visit her father in another county, and that thereafter their home burned, and the husband collected the insurance money, refused to furnish a new home, and spent the money on other women, were not prejudicial to the defendant.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 533–548; Dec. Dig. ⟨key⟩167.]

7. DIVORCE ⟨key⟩165(3).—VACATION OF DECREE —PARTY'S SUBSEQUENT REMARRIAGE—EFFECT.

Where a husband, suing for a divorce on the ground of the wife's abandonment, obtained a decree through fraudulent representations that there would be no contest, etc., the wife was entitled to its vacation and to a restoration to her status as a lawful wife, with the legal right to defendant's protection and support for herself and children, notwithstanding the fact that he had entered into a marriage relation with another innocent woman; as he was in no position to profit by the innocence of such other woman.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 535–538; Dec. Dig. ⟨key⟩165(3).]

8. DIVORCE ⟨key⟩167 — ABANDONMENT — EVIDENCE—PREVIOUS SEPARATION.

Evidence of a quarrel between plaintiff and defendant some eleven years before as a result of which she then left him, in view of a subsequent reconciliation and living together, was too remote and of no probative force on the issue of the three years' abandonment on which his action was based.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 533–548; Dec. Dig. ⟨key⟩167.]

9. DIVORCE ⟨key⟩111—ABANDONMENT—ISSUES— EVIDENCE—CRUELTY.

In a husband's action for a divorce on the ground of the wife's abandonment, evidence as to his other reasons for filing the suit, such as her humiliation of or cruelty to him, was immaterial.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 365, 366; Dec. Dig. ⟨key⟩111.]

10. APPEAL AND ERROR ⟨key⟩213—SUBMISSION OF ISSUES—REQUESTS.

In a wife's suit to set aside a decree of divorce alleged to have been fraudulently obtained by the husband, the husband presented numerous exceptions to the special issues submitted to the jury on the ground of omissions clearly calling for requested issues embodying the additional finding desired, in the absence of his request for such special issues, would be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1165, 1304–1308; Dec. Dig. ⟨key⟩213.]

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.

**11. DIVORCE ☞37(5)— ABANDONMENT—PERMANENCY.**

While the statute does not use the term "permanent" in prescribing abandonment as a ground for divorce, its permanency is necessarily implied, and an abandonment which is only temporary is not cause for divorce.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 111; Dec. Dig. ☞37(5).]

**12. TRIAL ☞350(3)—VACATION OF DIVORCE DECREE—SUBMISSION OF ISSUES—SPECULATIVE ISSUE.**

In a wife's action to vacate a decree of divorce alleged to have been fraudulently obtained by the husband by reason of the representation of his counsel that there would be no contest, and a trial without notice to the wife, a requested issue as to whether, if the jury fee had been paid, the case would have been tried and the decree rendered, was merely speculative and immaterial, and properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 831; Dec. Dig. ☞350(3).]

**13. ATTORNEY AND CLIENT ☞86—AGREEMENTS OF ATTORNEY—KNOWLEDGE.**

If agreements of defendant's counsel relating to the payment of the jury fee in a husband's action for divorce and to the passing of the case were in fact made, it was immaterial that defendant was without knowledge thereof.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 155–160; Dec. Dig. ☞86.]

**14. TRIAL ☞351(5)—SUBMISSION OF ISSUES—REQUESTS—MATTERS ALREADY COVERED.**

Requested issues were properly refused, where, so far as proper, they were sufficiently comprehended in the special issues submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834; Dec. Dig. ☞351(5).]

**15. TRIAL ☞351(1)—TIME TO PREPARE AND FILE OBJECTIONS—DISCRETION.**

In a wife's suit to vacate a decree of divorce fraudulently obtained by the husband, the allowance to defendant's counsel of an hour or an hour and a half to file objections to the issues submitted and to prepare and present special issues, and where it appeared that numerous special issues were prepared and presented, and it did not appear what other special issues would have been prepared and presented, was not an abuse of its discretion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 836; Dec. Dig. ☞351(1).]

**16. TRIAL ☞351(5)—VACATION OF DIVORCE DECREE—FRAUD—FINDING.**

In a wife's suit to vacate a decree of divorce alleged to have been fraudulently obtained by the husband, it was immaterial that fraud eo nomine was not submitted or found by the verdict, where it was a necessary conclusion from the facts submitted and found.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834; Dec. Dig. ☞351(5).]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by Clara L. McConkey against C. E. McConkey to set aside a decree of divorce obtained by defendant. Judgment setting aside the decree and denying defendant's petition for divorce, and he appeals. Affirmed.

S. C. Padelford and J. O. Lockett, both of Cleburne, for appellant. Walker & Baker, Johnson & Harrell, and Ramsey & Odell, all of Cleburne, for appellee.

CONNER, C. J. This suit was instituted by the appellee, Mrs. Clara L. McConkey, in the district court of Johnson county, to set aside a decree of divorce entered in the same court at a previous time in favor of appellant, C. E. McConkey. In outline the case seems simple enough, but it has taken a transcript of some 479 pages to present a copy of the proceedings on the trial below, and the transcript, with its accompanying statement of facts, consisting of some 118 pages furnishes the foundation of a brief in behalf of appellant of 172 pages of closely printed matter urging 114 assignments of error, to which appellee replies in a brief of 122 pages. It is therefore evident that the record before us is voluminous, and that the assignments of error can only be disposed of in a general way, if we confine ourselves, as we think should be done, to an opinion of reasonable length. In the attempt to do this, we think the following statement of the case from appellee's brief, which we adopt, will be of service:

"In 1897 appellant and appellee were married, and continuously after said date lived together until some time in the year 1910; the exact date and cause of their separation being one of the contested issues in the case. As a result of this marriage there were born to them five children, four of whom were living at the date of the trial, three being girls and the youngest a boy, and all minors.

"On June 28, 1913, the appellant filed in the district court of Johnson county, Tex., a suit for divorce against appellee, who was then residing in Bell county, the petition alleging that in May, 1910, the appellee without provocation, justification, or excuse had abandoned appellant, and refused to live with him. This petition was filed by W. Featherstone, a member of the Cleburne bar. Shortly afterwards service was obtained upon the appellee in said cause, and in July, 1913, a few days later, appellee employed Ramsey & Odell, a firm composed of W. F. Ramsey, Jr., and W. M. Odell, members of the bar of Johnson county, Tex., to defend her in said cause. On July 24th said attorneys, as counsel for appellee, filed an answer in said cause, denying the allegations in appellant's petition, and presenting a plea for alimony pending trial, attorney's fees, etc. The case was returnable to the October term, 1913, of said court, and on October 17th of that year an amended answer was filed in said cause by the appellee denying in detail the allegations in plaintiff's petition, and alleging at length the facts constituting appellee's defense and renewing the prayer for alimony, attorney's fees and costs. On October 10th appellee filed an application for security for cost, which was granted on said date by an order duly entered in the minutes of said court. During the October term, 1913, interrogatories were propounded in the case by counsel for appellee, and service waived by counsel for appellant. The case was set for trial on several dates during the October term, but was not tried during that term, the reason for its postponement and continuance being a contested issue in the case, but the jury found that it was passed from time to time by agreement between W. M. Odell and W. B. Featherstone. On the call of the docket at the January term, 1914, on the first day of that court, counsel for appellee requested a jury in the case, and, as shown by appellee's testimony, and found by the jury, it was agreed by W. M. Odell, one of the attorneys for ap-

pellee, and W. B. Featherstone, attorney for appellant, that the jury fee might be paid at any time before the case was tried.

"Thereafter, by agreement between Odell and Featherstone, according to the testimony of the former, the case was set for trial for the week beginning February 9th, one of the weeks for which civil jury cases were assigned for trial at said term of said court, and on January 27th appellee's counsel wrote to her at Temple advising her of the setting of the case for that date, and requesting her to remit the jury fee. A few days later, according to testimony offered by appellee, Odell and Featherstone had a conversation in which it was agreed that on account of the fact that there were a number of other cases on the docket ahead of this case, and in order that appellant might not have to lay off his run as railway fireman, and that appellee would not have to come to Cleburne unnecessarily, this case should not be called for trial before Wednesday of the week beginning February 9th, or February 11th, and on February 6th appellee's counsel advised her to that effect. On Monday, February 9th, the first day of the week for which the case had been set by this agreement, when the time came for court to be called, it was announced to the members of the bar that Judge Lockett, the regular judge of said court, was seriously ill and would not be able to hold court that day, and probably not during the week. After the members of the bar conferred with each other and the clerk of the court, the jury for that week was discharged, and no cases of any character were taken up for trial that week. On Monday, February 16th, which was the last civil jury week of the term, Judge Lockett's illness continued, he being seriously ill at that time, his illness in fact continuing for several months, and he was not present at any other time during the January term of said court. By reason of this fact the jury for the week beginning February 16th was discharged, and no cases were taken up for trial during that week at all. Under the custom of said court, as shown by appellee's testimony without contradiction, the first week of court was set aside for the trial of nonjury cases, and the next week and certain weeks following that were assigned to the trial of civil jury cases, and the balance of the term was assigned to the trial of the criminal docket. At the term in question the week beginning February 16th was the last civil jury week, and the week beginning February 23d was the beginning of the weeks set apart for the criminal docket. It was also shown that for many years it had been the custom of that court that no civil cases would be called for trial or tried during the weeks set apart for the trial of criminal cases except by agreement of counsel with the approval of the court, or by a special order of the court after notice to the parties to the suit or their attorneys. On Friday, February 20th, before the criminal docket was to be called on Monday, February 23d, the bar of Johnson county was called together in the courtroom, and Col. J. F. Henry was elected as special district judge to preside in the absence of Judge Lockett. After the election of Col. Henry as special judge, and during the week beginning February 23d, Mr. Featherstone requested him to take up and try a divorce case for him; the conversation between them, as testified to by Col. Henry, being quoted so far as material to this statement. According to this testimony, Mr. Featherstone stated to him that he had a little divorce case that he wanted him to try. 'He said his client was a railroad man, and it was not convenient for him to be here except late in the afternoon somewhere about 5 or 6 o'clock; I think he mentioned the time. I think I told him I would hear the case the next day and to get his client here, perhaps that evening. I don't recollect; but anyhow I agreed to hear the case at 5 or 6 o'clock in the evening, in order to suit the convenience of his client. Now, the next day, or whatever day I told him I would hear the case,

I am not sure now, I met him about the foot of the steps there. I had either started down myself and met him coming up, or he had started down and met me coming up, I am not sure about that; but anyhow we met at the top of the steps, and he asked me something about the case, and I told him I was ready to hear it then. He said, "Let's step into the district clerk's office, my client is in there and the papers are there, and hear it." I don't think I asked him; but anyhow, in connection with telling me that his client was in the clerk's office and the papers were there and we could go in there and try it, he told me there would be no contest in the case. I think I asked him then if the party had been properly served, and he said that he had or she had. I am not right certain whether I asked him whether there had been an answer filed or not, but I think I did; but anyhow, when he told me there would be no contest in the case, mechanically almost, I reckon, I asked him if the party had been served, and he assured me that she had, and upon that statement I went into the clerk's office with him and found his client there and I heard the case.' 'At that time I had no information whatever that the defendant in that case, Mrs. McConkey, was represented by counsel. From what Mr. Featherstone had stated to me on the steps I was led to believe and did believe that there was no attorney representing the defendant in that case. In hearing the case the way I did and where I did and under the circumstances that I did hear it I relied implicitly on Mr. Featherstone's statements as being true about there being no contest, etc. I did not see any answer in that case at any time prior to the time I heard the evidence in the case and granted the divorce.'

"After hearing the appellant's testimony Col. Henry was in doubt as to whether he was entitled to judgment for divorce, and delayed until the following day to look up some authorities, but on the next day entered an order granting the divorce as prayed for.

"Mr. Featherstone testified as a witness for appellant upon the trial of this case, and the testimony of Col. Henry as to the statements made by him to the effect that there would be no contest in the case was not denied or contradicted by him.

"On the day the case was tried, February 24, 1914, an amended petition, was filed by plaintiff in the case. This petition was signed by E. B. Featherstone and J. O. Lockett as attorneys for plaintiff. J. O. Lockett testified on the trial that Featherstone discussed with him on two occasions the question of calling up the case in controversy without notice to appellee's attorneys, and that he stated to him that he could not pass on that for him; that Featherstone said that he did not consider that it was his duty to notify appellee or her counsel; that there was no agreement to not call the case, and that he was coming over to the courthouse, have the case called up, and have it tried; that he left the office and said he was going to call it up, and that he was not going to give the other side notice; that he did not deem it his duty so to do. After these conversations Mr. Lockett took no further part in the case, and was not present when it was tried or when the judgment was entered, and was not a party to any of the transactions alleged by appellee to have been fraudulent representations by which a trial of the case was secured without notice to appellee's counsel.

"On February 25th an entry was made by Judge Henry upon the trial docket granting the decree of divorce, and a judgment was accordingly entered in the minutes of divorce cases, which were kept in a separate book from the other minutes of the court. The transactions with reference to the purported trial of the case and the entry of the order mentioned all took place in the office of the district clerk, and none in the district court room. On the day the case was heard by Judge Henry W. M. Odell, one of the appellee's attorneys, was.

engaged in the trial of a case in the county court, and W. F. Ramsey, Jr., the other member of said firm, was at his office in Cleburne, and no notice of any character was given to either of them that the case would be called for trial on that date, or at any other time, after the original setting for February 11th. On the day that the January term of said court adjourned appellee's attorneys examined the minutes of the court for ordinary civil business for the purpose of seeing that orders in cases in which they were interested were properly entered, but, having no other divorce case on the docket, and having no reason to believe that any order had been entered in the McConkey case, no examination was made of the divorce minutes, and neither appellee nor her counsel had any notice or knowledge of the purported trial and decree until May 1st, when appellee accidentally heard at Temple that appellant had obtained a divorce from her. This fact was immediately communicated by her to her counsel, who wired her to come to Cleburne, which she did on Tuesday, May 5th, and on that date this suit was filed by her to set aside the purported decree of divorce and to restrain the appellant from attempting to remarry. A writ of injunction was obtained on that date, was not served upon appellant, and on the following day, May 6th, appellant went to Ft. Worth and procured a marriage license, and a marriage ceremony was performed between him and a Mrs. Hill.

"The appellee continued the prosecution of her suit to set aside the divorce, and the case was tried at the May term, 1915, of the district court of Johnson county.

"The testimony of the appellee abundantly supports all of the material allegations in her petition, and was to the effect: That in May, 1910, at the request of the appellant, she went to visit her parents in Denton. That shortly after going there their home in Brownwood was burned. That appellant collected insurance upon their furniture amounting to $500, and since that time had wholly failed and refused to provide a home for her children and herself, in face of repeated requests and entreaties that he do so. That she had gone to Temple, where appellant was then residing, for the purpose of seeing appellant and requesting him to provide a home for them. Appellant had asked her, 'What in the hell did you come here for?' and, when she replied that she came to get a home for herself and her children, he remarked, "He did not give a damn what became of me and the kids; that he had others to look after.' That she had never refused to live with appellant, and that, to quote her language: 'I always loved Mr. McConkey dearer than any human being on earth, and would do anything in the world for him, and would have until this day, but he did not treat me right and provide for myself and children as he should do.'

"The case was submitted to the jury by the court on special issues, in response to which the jury found that the appellee had not abandoned the appellant; that appellant had refused to live with appellee after she went to her home in Denton in May or June, 1910; that appellant was unwilling to live with appellee, and would not have consented to have lived with her as husband and wife if she had been willing to do so; that appellee prior to the filing of the suit requested appellant to provide a home for her children and herself, and offered to live with him as his wife; that the divorce case was not tried during the time set apart for the hearing of civil cases, and appellee's attorneys had no notice that said case was to be tried at the time and place it was tried; that there had been an agreement between one of the attorneys for appellee and the attorney for appellant to pass said divorce case from time to time during the trial of the civil docket; that it had been agreed between said attorneys that the jury fee might be paid at any time before the case

was tried; and that appellee's attorneys were not guilty of negligence in not discovering during the term of court at which the divorce judgment was rendered that said judgment had been rendered.

"Upon the findings of the jury a judgment was rendered setting aside the decree of divorce as being null and void, and denying the appellant's petition for divorce. From that judgment this appeal has been prosecuted."

[1] As a counter proposition to all of appellant's assignments of error appellee insists that the decree of divorce is absolutely void under the circumstances of its rendition. It is true, as we must hold from the verdict, that the cause was called out of its regular order and determined, without notice to appellee or her counsel, in a room other than the room designated for the trial of causes. While these circumstances, other necessary things being shown, were sufficient to authorize a setting aside of the decree, they would not of themselves render the judgment a nullity in the strict sense of the term. They are rather in the nature of irregularities of procedure, and do not extend to a want of jurisdiction on the part of the court which rendered the judgment. By the terms of the statutes (Revised Statutes, arts. 4630 and 4631) the court was expressly empowered to try the divorce cause upon the ground set forth in the plaintiff's petition in that case, and such power is in no wise made dependent upon or abridged by the absence of counsel, through want of notice, or the particular room of the courthouse in which the trial took place. See Niagara Ins. Co. v. Lee, 73 Tex. 641, 11 S. W. 1024; Helm v. Weaver, 69 Tex. 143, 6 S. W. 420; Holliday v. Holliday, 72 Tex. 581, 10 S. W. 690.

[2] Nor can it be said, as asserted in one of appellee's propositions, that for other reasons no judgment other than one setting aside the divorce decree could have been rendered, and that hence the judgment below must be affirmed, regardless of errors committed during the course of the trial. It is to be remembered that it was necessary for the plaintiff in this suit, in order to entitle her to the relief sought, to allege and prove, not only circumstances of unfairness or fraud in the trial of the divorce case and that through no want of diligence on her part such unfairness or fraud was not discovered during the term of the court at which the divorce decree was rendered, but also that she had a meritorious defense to the suit for divorce. See Holliday v. Holliday, 72 Tex. 581, 10 S. W. 690. More or less all such allegations relied upon by appellee were made issuable below, both in the pleadings and by the evidence, so that the court would not have been authorized to take the case away from the jury, direct a verdict, or enter up a judgment on the undisputed evidence. It therefore becomes necessary for us to consider the proceedings below for the purpose of determining whether material error in such proceedings has been committed, and whether the evidence supports the verdict

and judgment in appellee's favor. This brings us to and requires of us a consideration of appellant's assignments of error.

[3] For the purpose of showing that the divorce decree had been procured fraudulently appellee alleged, in substance, that in that case she had duly filed an answer denying the abandonment upon which appellant had based his suit, and that the case had been placed upon the jury docket for trial, appellant's attorney having agreed that the jury fee might be paid at any time before the trial, and that the case had been postponed from time to time by agreement of counsel and because of the sickness of the regular judge until February 16, 1914, the last week of the term set apart for the trial of jury civil cases, at which time the jury for the week was discharged because of the continued illness and absence of the regular judge. It was further alleged that the following three weeks of the term beginning on February 23, 1914, by the regular practice and order of the court, was set apart and devoted to the trial of criminal cases only; that on February 20, 1914, Hon. J. F. Henry was duly elected by the practicing attorneys as special judge to discharge the duties of the court for the remainder of the term. It was further alleged that, notwithstanding the agreements and course of practice set forth, appellant's attorney, W. B. Featherstone, without any notice to appellee or her counsel, secured a trial and decree of divorce in a detached room of the courthouse, upon assurances to the judge that there was no contest, etc.

For the purpose of showing why no effort was made during the remainder of the term to set aside the decree, and of diligence after its discovery, it was alleged, in substance, that the decree of divorce was entered in a separate book kept for that purpose and of which counsel for appellee was ignorant; that counsel for appellee at the end of the term examined the regular minute entries of the court to see what orders had been made in cases in which they were interested, and failed to find any entry in the divorce case, or to otherwise acquire any notice of the trial and decree of divorce. Appellee further alleged that she did not learn of the trial and divorce until about May 1, 1914, when she wrote informing her attorneys thereof, who at once instituted this suit to vacate the decree. It was also averred that the allegations of abandonment in the petition for divorce were false, and that appellant testified falsely to such alleged abandonment on the trial. There are other allegations of like purpose on the part of the pleader, and copies of the petition and answer in the divorce case and of correspondence between appellee and her counsel relating to the jury fee, the discovery of the divorce decree, etc., were attached to appellee's petition herein as exhibits.

To very many of the several allegations of appellee, as hereinbefore noted, appellant in his answer directed specific exceptions, and here presents numerous assignments of error to the action of the court in overruling them. Appellant likewise objected to the introduction of all evidence offered in support of said allegations and numerous assignments of error go to the action of the court in overruling such objections. All of these assignments have been severally considered, but we find no prejudicial error in any of the indicated rulings. In the main at least the allegations are relevant to the necessary elements of appellee's case, and that there may perhaps be some unnecessary averments, or some in the nature of mere evidentiary facts, do not in our judgment, require a reversal of the judgment under the operation of rule 62a (149 S. W. x), which provides:

"No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court. * * *"

As before stated, it was necessary to show that the divorce trial and decree was unfairly or fraudulently secured without fault on appellee's part, that the failure to earlier discover the rendition of the decree was not attributable to negligence of appellee or her counsel, and, finally, that she had a good defense, in that the testimony upon which the decree was founded was false. Mere averments to these effects would have been objectionable as simple conclusions of the pleader. It was hence correct to set forth the circumstances leading to such conclusions, rather than the conclusions themselves. The allegations therefore of the agreements of counsel, the placing of the case on the jury docket, the trial in the district clerk's office, without notice, the false assurances to the judge, etc., and the proof of these circumstances all tended to support the conclusion that the trial of the divorce case was unfairly or fraudulently obtained.

[4] Nor was petition or proof insufficient because appellant himself is not made to appear cognizant of the agreements, want of notice, etc. It affirmatively appears that his counsel was, and appellant cannot here stand excused on the ground of ignorance.

[5] Nor is it material that the agreement for the payment of the jury fee was oral, and hence not enforceable as such under our decisions. Appellee's testimony shows that the agreement was in fact made, and the case in fact placed upon the jury docket, called up out of its regular order without notice. If these facts were true, and it must be so imputed to the verdict of the jury, it was grossly unfair, and, while our courts have held that verbal agreements of counsel

will not be enforced, they have never held, so far as we know, that a violation of a gentleman's agreement of the kind may not be considered as a circumstance of fraud. Indeed, new trials have often been granted upon such grounds. See Medlin v. Commonwealth Bonding & Casualty Ins. Co., 180 S. W. 899.

[6] There was an exception to allegations in the appellee's petition to the effect that at the alleged inception of her abandonment she had upon appellant's insistence gone on a mere visit to her father in another county: that soon thereafter their home burned; that appellant collected the insurance money and refused to supply a new home, though she insisted thereon, but spent the money in riotous living with other women, etc. These allegations, however, seem to be in reply to appellant's averments in his petition for divorce that appellee had left with intent to abandon him, notwithstanding that "during all the time he lived with his said wife, the defendant herein, he treated his said wife with affectionate regard, consideration, and kindness, and provided for her as his means would justify." While it is doubtless true that proof of the allegations could have been made under the general denial, we fail to see how the specific allegations could operate to appellant's prejudice in a legal sense.

[7] Exception was also taken to the action of the court in sustaining appellee's objections to allegations showing that appellant entered into another marriage relation with another woman the day after his suit was filed. But we fail to see how these facts could defeat appellee's right to the relief she sought, however innocent the other woman might be. If the material allegations of appellee's petition are true, and the jury have in effect so found, she was entitled to be restored to the status of a lawful wife with legal right to appellant's protection and support for herself and the four children that the evidence shows were the fruits of her marriage with appellant. These rights were at least equal with those of the other woman, and she cannot be deprived of them against her will by means of fraud and perjury, as found by the jury, unmixed with negligence or fraud on her part. Appellant certainly under the findings is not in position to profit by the innocence of the woman he later married, and her rights or status are not before us for determination. There was no error, therefore, in the court's ruling on the exceptions and in excluding evidence on this question. See Stephens v. Stephens, 62 Tex. 337; Simpkins v. Simpkins, 14 Mont. 386, 36 Pac. 759, 43 Am. St. Rep. 641; Medina v. Medina, 22 Colo. 146, 43 Pac. 1001; Holmes v. Holmes, 63 Me. 420; Bomsta v. Johnson, 38 Minn. 230, 36 N. W. 341; Wortman v. Wortman, 17 Abb. Prac. (N. Y.) 66; Caswell v. Caswell, 120 Ill. 377, 11 N. E. 342; Whitcomb v. Whitcomb, 46 Iowa, 437; Rush v.

Rush, 46 Iowa, 648, 26 Am. Rep. 179; Olmstead v. Olmstead, 41 Minn. 297, 43 N. W. 67; Allen v. Maclellan, 12 Pa. 328, 51 Am. Dec. 608; Crouch v. Crouch, 30 Wis. 667; Edson v. Edson, 108 Mass. 590, 11 Am. Rep. 393; True v. True, 6 Minn. 458 (Gil. 315); Comstock v. Adams, 23 Kan. 513, 33 Am. Rep. 191; Adams v. Adams, 51 N. H. 388, 12 Am. Rep. 134.

[8, 9] We think the court properly excluded appellant's offered testimony of a quarrel between himself and appellee some eleven years before as a result of which she then left him. It appears that a reconciliation soon thereafter took place, and that appellee thereafter continued to live with appellant until the final separation, during which time four of their children were born. The circumstance and particulars of the brief separation therefore were too remote and were of no probative force on the issue of the three years' abandonment on which alone appellant's suit for divorce was based. Nor do we think appellant's reasons for filing the divorce suit other than the ground alleged material. As stated, the divorce suit was based on abandonment, and not upon any conduct on appellee's part that may have humiliated appellant or constituted cruelty in any degree.

[10] Appellant presented numerous exceptions to the special issues presented to the jury. These have all been examined, and we have found no material error in this respect. In most instances the objection was because of some omission in the issue submitted which, as it seems to us, clearly called for a requested issue embodying the additional finding desired. To illustrate: The first issue submitted by the court was as follows:

"Was there any agreement between W. M. Odell and W. B. Featherstone that the jury fee might be paid at any time before the case was tried; that is, the case of C. E. McConkey v. Clara L. McConkey for divorce pending in the district court of Johnson county, in January or February, 1914, or did W. B. Featherstone require that the fee should be paid at the time of the conversation between him and W. M. Odell in the rear of the National Bank of Cleburne."

To which appellant excepted on the following grounds:

"(a) Same does not submit to the jury all the facts and issues which go to make up negligence on the part of W. F. Ramsey or W. M. Odell, either or both of them, in not being present and presenting defense to the said case of C. E. McConkey v. Clara L. McConkey, and same does not present all of the facts which would make fraud on the part of the said Featherstone in preventing the said W. F. Ramsey and W. M. Odell from being present at the time said cause was tried and judgment rendered.

"(b) The court in this case should have submitted to the jury the question as to whether the fact that W. M. Odell and W. B. Featherstone had an agreement that the jury fee could be paid at any time before the case was tried prevented the said W. M. Odell or W. F. Ramsey from being present on the trial of said cause."

[11] No special issues were requested by appellant soliciting the findings desired, and

all such exceptions will therefore be overruled. See Vernon's Sayles' Texas Civil Statutes, art. 1985; Johnson v. Fraser, 92 S. W. 49. Nor do we think there was error in the court's definition of abandonment, nor in so amending a special charge as to require a finding that the alleged abandonment on appellee's part was "permanent." While the statute does not use the term "permanent," we think it is necessarily implied that an abandonment which is not intended as permanent, but which is temporary only, will not constitute sufficient cause for divorce upon the ground of abandonment. Speer's Law of Marital Rights, § 527.

[12] Appellant also presents a number of assignments to the action of the court in refusing to submit certain special issues presented for that purpose. These also have been examined and found to present no error. Some of the requested findings were merely speculative. As, for instance, one of them is:

"If W. M. Odell, attorney for the plaintiff in this case, had paid the clerk the jury fee, after the same had been received, would said divorce case have been tried and said divorce judgment rendered?"

So far as we are able to judge, the question thus presented is speculative merely, and presents no material issue necessary for the determination of the jury.

[13] Another one is:

"Did C. E. McConkey at or before the time of the rendition of the judgment for a divorce have any knowledge or notice of any agreement with reference to paying the jury fee, setting the case, or passing the case the case of C. E. McConkey v. Mrs. Clara L. McConkey for divorce. If so, state specifically which of said agreements he had notice of."

[14] This, as we think, was wholly immaterial. If the agreements relating to the payment of the jury fee and to the passing of the case were in fact made by appellant's attorneys, as submitted by the court, it was wholly immaterial that appellant was without knowledge of such agreement. Yet others of the requested issues, we think, so far as proper, were sufficiently comprehended in the special issues the court in fact submitted. So that, on the whole, all such assignments will be overruled.

[15] A number of assignments are presented complaining of the action of the court in refusing to allow appellant's counsel reasonable time, as alleged, within which to prepare and file objections to the special issues submitted to the jury by the court, and to prepare and present special issues which it is claimed it desired to have submitted. It seems that the court in all gave appellant's counsel an hour or an hour and a half for the purposes stated, and we feel unable to state that the court abused his discretion in respect to the matters complained of. The record shows that numerous objections to the issues submitted by the court, which were

but six, were in fact prepared and presented, and that numerous special issues were also prepared and presented. Appellant's brief, as we interpret it, fails to point out what other or further valid objections to the issues as submitted could have been made, or what other or further special issues not submitted should have been, and for anything that we are able to discover all of the material controverted issues in the case were submitted to and passed upon by the jury.

[16] In this connection we should perhaps notice an objection that the court failed to submit the issue or require a finding of fraud. As it seems to us, however, the court's charge required a finding of the material facts alleged, which, if true, as found by the jury, would constitute fraud. If so, it would be immaterial that fraud eo nomine was not named in the verdict or in the charge. This was a necessary inference or conclusion to be drawn from the facts actually submitted and found.

No other question of moment now occurs to us, and we accordingly conclude that all assignments of error should be overruled without further discussion, and the judgment affirmed.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.